**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Paul Wheeler MADEWELL,**
**Defendant–Appellant.**

**No. 89–3700.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 19, 1990.

Decided Oct. 30, 1990.

Stephen B. Clark, Thomas M. Daly, Asst. U.S. Attys., Office of U.S. Atty., East St. Louis, Ill., for plaintiff-appellee.

Cheryl I. Niro, Oak Park, Ill., for defendant-appellant.

Before FLAUM, EASTERBROOK and KANNE, Circuit Judges.

FLAUM, Circuit Judge.

Defendant Paul Madewell was found guilty of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The district court sentenced him to 41 months in prison. Madewell appeals his conviction contending that he is entitled to a new trial because his trial counsel afforded him constitutionally inadequate assistance. He also appeals his sentence on the ground that the district court erred in its interpretation and application of the Sentencing Guidelines. We affirm both Madewell's conviction and sentence.

## I.

On August 15, 1988, Officer Walter Milton of the Granite City, Illinois Police Department responded to a call for help from defendant Madewell's live-in girlfriend, Debra Wilson. Milton arrived at Wilson and Madewell's apartment building to find Wilson with a bloodied mouth; she requested that Milton accompany her into the apartment so that she could safely retrieve her clothes. Officer Milton knocked on the apartment door and Madewell opened it. Wilson entered the apartment and invited Milton inside. Madewell and Wilson immediately began arguing. Madewell then turned to Officer Milton and demanded that he leave the apartment and secure a search warrant. Debra Wilson soon left the apartment, at which time Madewell leveled a cocked gun at Officer Milton and demanded again that he leave. Milton

backed out of the apartment with his hands raised and then radioed for assistance.

After being joined by several officers, Milton forcibly reentered Madewell's apartment. The officers searched the apartment and found Madewell hiding in his bathtub behind a shower curtain. Madewell refused to come out of the bathroom and shouted that if the officers attempted to capture him he would "blow their heads off." Thereafter the officers subdued Madewell, recovered the firearm he had brandished, and took him into custody.

Three days later, after being advised of his *Miranda* rights, Madewell agreed to talk to Lt. David Reubhausen of the Granite City Police. Lt. Reubhausen took down Madewell's statement; Madewell then read Reubhausen's transcript and signed each page to attest to its accuracy. Regarding his armed ejection of Officer Milton, Madewell stated that "if the officer had reached for his gun, I would have shot him." Madewell admitted that when the police then reentered his apartment, he "check[ed] [his] gun to make sure it was ready to go." He stated that he sought refuge in the bathtub so that he could "get [the officers] without getting hurt." He also told police that while in the bathtub he had chambered a round in his gun and cocked it.

Investigation by the Bureau of Alcohol, Tobacco and Firearms (BATF) revealed that Madewell had been convicted of a prior felony—in 1980 he had been found guilty in an Arkansas court of possession of a controlled substance with intent to deliver. BATF also determined that Madewell's gun had been manufactured in Florida and thus had crossed state lines and "affected" interstate commerce.

Madewell was indicted in federal court for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and for filing a false statement with a gun dealer in which he failed to acknowledge that he was a convicted felon in violation of 18 U.S.C. § 922(a)(6).

A jury found Madewell guilty on the felon-in-possession charge and acquitted him on the false statement charge. In sentencing Madewell under the Sentencing Guidelines, the district court noted that the base offense level for Madewell's felon in possession conviction was properly computed by referencing the Guideline provision relevant to the "offense conduct" underlying his arrest and conviction. *See* United States Sentencing Commission, *Guidelines Manual*, § 2K2.1(c)(2) & comment. (backg'd.) (Nov.1989). The court found the guideline for the offense conduct of Aggravated Assault, § 2A2.2, applicable to Madewell's circumstances. The Guidelines Commentary defines aggravated assault in relevant part as a "felonious assault that involved ... a dangerous weapon with intent to do bodily harm (i.e., not merely to frighten)...." U.S.S.G. § 2A2.2, comment. (n.1). The district court held that Madewell's conduct fit this definition. Accordingly, it computed the base offense level for Madewell's crime to be 15, and added 3 points for brandishing a firearm, § 2A2.2(b)(2), and three more because the victim of Madewell's assault was a law enforcement officer, § 3A1.2. The resulting offense level of 21 indicated a sentence of 41 to 51 months. The district court sentenced Madewell to 41 months imprisonment.

Madewell's appellate counsel filed a notice of appeal. Madewell independently filed his own Motion for Mistrial Due to Ineffective Assistance of Counsel with the district court. The district court did not rule on his motion as the issue it raised would be resolved in this appeal.

## II.

■ Defendant alleges that the cumulative impact of two different errors by his trial counsel constituted ineffective assistance of counsel in contravention of the sixth amendment.[1] In order to prevail in

---

1. The Government contends that an ineffective assistance claim is improper grounds for direct appeal of a criminal conviction and should be raised only on collateral attack in proceedings pursuant to 28 U.S.C. § 2255. While direct appeal may be a less than optimal posture for an ineffective assistance claim due to the absence of a prior evidentiary hearing directed to the

his claim, Madewell must meet both prongs of the test propounded by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Defendant must show both that counsel's performance was deficient and not "within the range of competence demanded of attorneys in criminal cases" and that counsel's errors were so serious as to deprive the defendant of "a trial whose result is reliable." 466 U.S. at 687, 104 S.Ct. at 2064. In going about this inquiry we recognize that our scrutiny of counsel's performance "must be highly deferential" and that we should afford counsel's conduct a "strong presumption" of reasonableness. *Id.* at 689, 104 S.Ct. at 2065; *see also United States v. Slaughter,* 900 F.2d 1119, 1124 (7th Cir.1990).

Madewell first contends that his trial counsel should have moved to suppress both the gun and his post-arrest statement to police on the grounds that the warrantless reentry of Madewell's apartment and warrantless arrest of Madewell himself violated the fourth amendment.[2] Apparently counsel did not do so because he believed that such a motion would be unsuccessful. Defendant argues that because the gun in particular was central to the felon-in-possession prosecution, trial counsel should have sought its suppression irrespective of the perceived likelihood of success of such a motion, so long as the motion could be made in "good faith." The likelihood of success of a motion, however, is directly relevant to the question of whether the failure to make it constitutes inadequate assistance of counsel. If a particular trial tactic is clearly destined to prove unsuccessful, then the sixth amendment standard of attorney competence does not require its use. *See United States v. Nolan,* 910 F.2d 1553, 1564 (7th Cir.1990) ("It is not ineffective assistance for counsel not to file a meritless motion."); *Goins v. Lane,* 787 F.2d 248, 254 (7th Cir.), *cert. denied,* 479 U.S. 846, 107 S.Ct. 165, 93 L.Ed.2d 103 (1986).

In this case, the likelihood of successfully suppressing the gun or Madewell's statement to police was slight. Madewell drew a gun on Officer Milton after Milton was invited into the apartment by Debra Wilson, a resident of the apartment with apparent authority to authorize the entry. *See Illinois v. Rodriguez,* —— U.S. ——, 110 S.Ct. 2793, 2797, 111 L.Ed.2d 148 (1990). Madewell's actions arguably amounted to aggravated assault under Illinois law. *See* Ill.Ann.Stat. ch. 38, para. 12–1(a), 12–2(a) (Smith–Hurd 1979 & Supp. 1990).[3] Consequently, Milton's forcible reentry of Madewell's apartment with his fellow officers constituted pursuit of an armed individual whom the police had probable cause to believe had committed a felony. The officers could have reasonably believed that Madewell, having ejected Milton at gunpoint, was likely to flee the apartment and possibly pose a further threat to public safety or attempt to dispose of his gun. Warrantless entry and pursuit under such exigent circumstances does not violate the fourth amendment. *See United States v. Santana,* 427 U.S. 38, 42–43, 96 S.Ct. 2406, 2409–10, 49 L.Ed.2d 300 (1976); *Warden v. Hayden,* 387 U.S. 294, 298–99, 87 S.Ct. 1642, 1645–46, 18 L.Ed.2d 782 (1967); *United States v. Ware,*

merits of such allegations, we see no reason why a defendant should be precluded as a matter of law from electing to tender his sixth amendment challenge on direct appeal rather than upon collateral attack where, as here, "a sufficiently developed record exists" to resolve the claim in full and fair fashion. *United States v. Fisher,* 772 F.2d 371, 373 n. 1 (7th Cir.1985).

**2.** Madewell does not contest his trial counsel's failure to challenge Officer Milton's original warrantless entry of the apartment at Debra Wilson's invitation as a violation of the Fourth Amendment; neither does he contest trial counsel's failure to move to suppress his post-arrest statement to police on Fifth or Sixth Amendment grounds.

**3.** Illinois law provides that "[a] person commits an assault when, without lawful authority, he engages in conduct which places another in reasonable apprehension of receiving a battery." Ill.Ann.Stat. ch. 38, para. 12–1(a) (Smith–Hurd 1979 & Supp.1990). A person commits aggravated assault under Illinois law when he commits an assault using a deadly weapon, *id.* at para. 12–2(a)(1), or "knows the individual assaulted to be a peace officer … while such officer is engaged in the execution of any of his official duties." *Id.* at para. 12–2(a)(6).

914 F.2d 997, 1000 (7th Cir.1990) ("Exigent circumstances exist when there is a reasonable belief by police that their safety or the safety of others may be threatened"); *United States v. Dowell*, 724 F.2d 599, 602 (7th Cir.1983), *cert. denied*, 466 U.S. 906, 104 S.Ct. 1683, 80 L.Ed.2d 157 (1984) (same); *United States v. de Soto*, 885 F.2d 354, 368 (7th Cir.1989) (fear of disposal of evidence may constitute exigent circumstances). Similarly, while warrantless arrests inside a suspect's home are generally prohibited by the fourth amendment, *see Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the presence of exigent circumstances, when twinned with probable cause, excuses the absence of an arrest warrant. *See Welsh v. Wisconsin*, 466 U.S. 740, 749–51, 104 S.Ct. 2091, 2097–98, 80 L.Ed.2d 732 (1984); *Steagald v. United States*, 451 U.S. 204, 211–12, 101 S.Ct. 1642, 1647–48, 68 L.Ed.2d 38 (1981); *United States v. Campbell*, 581 F.2d 22, 25–26 (2nd Cir.1978).

Thus, defense motions to suppress Madewell's gun and statement to police would have failed. It follows that while Madewell's trial counsel may not have acted in exceptionally zealous fashion, neither did he act unreasonably and outside the bounds of the sixth amendment in failing to move for the suppression of the gun and Madewell's post-arrest statement to police.

Madewell also contends that his trial counsel proved ineffective in failing to stipulate to his prior felony conviction. He argues that had his trial counsel stipulated to the conviction, the jury would have never found out that his Arkansas conviction was for a drug-related offense. (In the alternative, Madewell argues that trial counsel should have moved to redact the nature of his conviction from the indictment or proposed a limiting jury instruction regarding its substance.) The failure to stipulate or otherwise act to minimize the impact of his prior conviction is significant, Madewell asserts, because of the particularly prejudicial nature of a prior *drug*-related offense. "In today's anti-drug climate," he contends, a prior drug conviction may so taint a defendant that it "lead[s] to

a conviction based on the inference that he was acting in conformity with past misconduct rather than on the basis of proof of guilt beyond a reasonable doubt." Defendant's Brief at 16.

Even if we were to assume that trial counsel's failure to act in the prescribed fashion was somehow unreasonable, the failure would in no way be prejudicial within the meaning of *Strickland*. Had counsel succeeded in stipulating to the prior felony, the jury would have still known that he was a felon and that he had possessed a firearm that had crossed state lines, the elements of conviction under § 922(g)(1). We find unpersuasive the proposition that knowledge of the nature of Madewell's prior felony and not knowledge of these facts caused the jury to find Madewell guilty. Police testimony establishing Madewell's possession of the gun was overwhelming and essentially uncontroverted. Neither did Madewell claim that his prior felony conviction was falsified. We might be more concerned with the possibility that the jury only found Madewell acting in conformity with past misconduct if the circumstances underlying his felon-in-possession conviction involved drugs, but that is not the case here. Given the nature of the evidence, we find that a stipulation or limiting instruction would have had an insignificant effect on the trial's outcome and any "failure" on the part of trial counsel to obtain a stipulation is properly considered harmless. *See* 466 U.S. at 694, 104 S.Ct. at 2068 (to meet prejudice threshold, defendant must demonstrate a reasonable probability that "but for" counsel's errors, "the result of the proceeding would have been different.")

### III.

Finally, Madewell challenges the district court's interpretation and application of the Sentencing Guidelines in determining his sentence. He contends that the court erred in cross-referencing the guideline for aggravated assault in computing his sentence for a felon-in-possession conviction. Because he was formally charged with being a felon-in-possession and not with the ag-

gravated assault of Officer Milton, Madewell maintains that the court should have imputed to him only the base offense level specifically prescribed by the guidelines for a § 922(g) charge.[4] In the alternative, Madewell argues that a sentence based on the aggravated assault guideline is inappropriate because the district court did not have before it sufficient evidence to conclude that he intended to do bodily harm to Officer Milton.

■ Defendant's first claim, that the cross-reference to aggravated assault was improper, is without merit.[5] The guideline for felon-in-possession charges, § 2K2.1, does provide for cross-reference where distinct offense conduct is implicated. § 2K2.1 states that "[i]f the defendant used or possessed [a] firearm in connection with commission or attempted commission of another offense, apply § 2X1.1 ... in respect to that other offense if the resulting offense level is greater than that determined above." § 2X1.1(a) provides that the base offense level under this section shall be "[t]he base offense level for the object offense...." This reference to the "object offense" can only mean one of two things—either reference to a defendant's offense conduct or reference to the charged offense. Because reference to § 2X1.1 comes *from* the charged offense, it would be illogical for us to read § 2X1.1 as requiring the sentencing court to look back *to* the charged offense. Rather, we agree with the district court that § 2X1.1's reference to the "object offense" must be interpreted as a reference to those guidelines applicable to the offense conduct underlying a charged offense. Madewell apparently agreed with this interpretation as well

during an earlier stage of the prosecution when he recognized in his Objections to the Presentence Investigation Report (at pp. 2–3) that reference to the guidelines relevant to offense conduct is appropriate under § 2X1.1 when such conduct can be adequately proven.

■ Madewell argues that the use of the conduct underlying a felon in possession prosecution to boost sentences under § 922(g) amounts to improper "prosecutorial manipulation" of the guidelines. In the face of explicit Guidelines' sanction, however, such "manipulation" is clearly lawful. Indeed, the Commentary accompanying § 2K2.1 appears to endorse the specific practice that Madewell protests:

> [t]he firearm statutes often are used as a device to enable the federal court to exercise jurisdiction over offenses that otherwise could be prosecuted only under state law. For example, a convicted felon may be prosecuted for possessing a firearm if he used the firearm to rob a gasoline station. *Such prosecutions result in high sentences because of the true nature of the underlying conduct.*

U.S.S.G. § 2K2.1, comment. (backg'd.) (emphasis added).

Madewell's remaining claim is that the crucial element of aggravated assault—an intent on the part of the perpetrator to do bodily harm to the victim—was not sufficiently proven to justify use of the aggravated assault base offense level. In its sentencing hearing the district court did not explicitly speak to the question of Madewell's intent. The court heard arguments from defense counsel that Madewell did not intend to hurt Officer Milton, but rather only frighten him. The court also

---

**4.** Use of the aggravated assault guideline resulted, after adjustments, in an offense level of 21, whereas use of the § 922(g) guideline would have resulted, after adjustments, in an offense level of 15. The difference between the two offense levels translates into additional sentencing exposure of 15–20 months.

**5.** Madewell also reformulates this claim in slightly different fashion, contending that the trial court erred in relying on the Probation Officer's interpretation of the Sentencing Guidelines. This argument, however, does nothing more than merely restate defendant's substan-

tive challenges to the district court's sentencing analysis. Because the court adopted the guidelines analysis proposed in the probation officer's report, there is no need for us to treat a direct challenge to the court's decision and a challenge to his "reliance" on the probation officer's report differently—the question common to both formulations is whether or not the court erred in its interpretation of the guidelines. Thus, we will not separately consider defendant's claim that the district court erred in "relying" on the Probation Officer's report.

heard the United States argue that Madewell's post-arrest statement did in fact evidence Madewell's intent to inflict bodily harm during his altercation with the police. It then ruled without specific comment on the question of intent that the aggravated assault guideline indeed "fit" Madewell's crime.

 We take the district court's ruling to mean that it found that a preponderance of the evidence in the trial record supported the determination that Madewell harbored an intent to do bodily harm. See *McMillan v. Pennsylvania*, 477 U.S. 79, 92, 106 S.Ct. 2411, 2417–18, 2419, 91 L.Ed.2d 67 (1986) (use of preponderance standard to prove sentencing factor that is not an element of the crime comports with due process); *United States v. Ross*, 905 F.2d 1050, 1054 (7th Cir.1990) (preponderance test appropriate in proving sentencing factors); *United States v. McDowell*, 888 F.2d 285, 291 (3rd Cir.1989) (same). The question, then, is whether the record adequately supports such a finding. Because a ruling on intent is a finding of fact, we will only dispute the district court's judgment if it constitutes clear error. *See United States v. Durrive*, 902 F.2d 1221, 1230 (7th Cir.1990).

Between Madewell's post-arrest statement and his testimony at trial, there is sufficient evidence in the record to support the district court's intent finding. Madewell's post-arrest statement demonstrates that having pointed a gun at Officer Milton, he was prepared to shoot if Milton had not left the apartment. His statement and trial testimony also demonstrate that he was prepared to fire upon the police officers that subsequently reentered the apartment and apprehended him. See Trial Transcript at 197. At trial and at the court's sentencing hearing, both Madewell and his counsel suggested that he was confused and irate that the police did not have a search warrant and merely intended to frighten away Officer Milton. While Madewell's behavior may have been originally motivated by a mere desire to frighten, his actions and post-arrest statement suggest that the desire to frighten quickly

gave way to more violent intentions. We therefore hold that it was not clear error for the district court to determine that a preponderance of the evidence supported a finding of intent to do bodily harm.

### IV.

For the foregoing reasons, defendant's conviction and sentence are

AFFIRMED.