**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Mario CAICEDO, Defendant–Appellant.**

**No. 89–2813.**

United States Court of Appeals,
Seventh Circuit.

Argued June 5, 1991.

Decided July 23, 1991.

---

Jacqueline Oreglia, Office of the U.S. Atty., Crim. Div., Barry R. Elden, Asst. U.S. Atty., Crim. Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

Cheryl I. Niro, Oak Park, Ill., for defendant-appellant.

Before CUMMINGS and POSNER, Circuit Judges, and NOLAND, Senior District Judge.*

NOLAND, Senior District Judge.

This is a direct criminal appeal in which the defendant-appellant, Mario Caicedo, challenges both his conviction of conspiracy to distribute cocaine and distribution of cocaine, and his sentence. Caicedo's sentence was imposed pursuant to the Sentencing Guidelines ("Guidelines"), which were promulgated by the United States Sentencing Commission. Caicedo argues that the district court erred in failing to conduct a "full" competency hearing, that it incorrectly applied the Guidelines, and that it otherwise failed to provide a sufficient statement of reasons for the sentence which it imposed. We affirm.

## I. BACKGROUND

Mario Caicedo, the defendant-appellant in the present case, was a self-employed watch repairman, before he became involved in the illegal sale of cocaine. Because Caicedo does not challenge the sufficiency of the evidence to support his conviction, it is unnecessary to set out in detail the factual background underlying his involvement in the conspiracy which was described in the indictment. Caicedo was arrested as the result of a successful undercover operation conducted by officers of the Chicago Police Department and the Drug Enforcement Administration. He arranged to have cocaine brought into the United States from Bogota, Columbia. Ultimately, he and codefendant William Berg-

mark would distribute it. On more than one occasion the cocaine was smuggled out of Bogota hidden in clocks behind engraved pictures of "The Last Supper."

On August 10, 1988, a special grand jury returned a five (5) count indictment charging Caicedo and codefendant Bergmark (a/k/a "Cole") with conspiracy and distribution of cocaine. Caicedo was charged in counts 1, 4, and 5 of the indictment. Count 1 of the indictment charged that Caicedo had conspired to possess with intent to distribute and to distribute a mixture containing cocaine from June of 1988 to on or about July 14, 1988, in violation of 21 U.S.C. § 841(a)(1) and § 846. Caicedo was alleged to have been Bergmark's supplier. Count 4 charged that Caicedo had distributed 29 grams of a mixture containing cocaine on or about July 8, 1988, in violation of 21 U.S.C. § 841(a)(1). Count 5 charged Caicedo with having distributed 1000 grams of a mixture containing cocaine on or about July 14, 1988, again in violation of 21 U.S.C. § 841(a)(1). While Bergmark eventually pleaded guilty to a single count of the indictment, Caicedo proceeded to trial.

On January 13, 1989, the government filed its Notice of Intent to Introduce 404(b) Evidence [1] at trial. The government stated in its Notice that it expected its evidence to show that the cocaine which Caicedo had delivered to Bergmark prior to Bergmark's sale of the same to undercover agents "remained in a type of package indicating it had come directly from a source country." The government sought to show that Caicedo was capable of providing such high quality cocaine from another country by introducing evidence that in the past Caicedo had supplied a woman in Bogota, Columbia with a kilogram of cocaine hidden in a clock, and that he had also assisted her by instructing her how to

---

* The Honorable James E. Noland, Senior District Judge for the Southern District of Indiana, is sitting by designation.

1. Federal Rule of Evidence 404(b) provides as follows:

 **(b) Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs or acts is not admissi-

ble to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

disassemble the clock without exposing the cocaine and how to avoid detection at the Bogota Airport.

At his jury trial, Caicedo was represented by appointed counsel, Steven B. Muslin, of Chicago, Illinois. Despite counsel's efforts, Caicedo was ultimately convicted on each of the three (3) counts in which he was named in the indictment. After the jury returned its verdict, Judge Rovner referred this case to the Probation Department for a presentence investigation. The report which resulted therefrom was issued on or about February 23, 1989. The probation officer who completed the presentence investigation report stated therein, under the section of the report entitled "Offense Adjustments," that Caicedo's offense level should be enhanced by two (2) points as a result of his perjured testimony before the Magistrate. Subsequently, on April 26, 1989, Caicedo's trial counsel filed his objections to the presentence investigation report. In due course, the government responded to Caicedo's objections.

On May 26, 1989, the court conducted Caicedo's Guidelines sentencing hearing. During this hearing, codefendant Bergmark and Kay Cool, one of the individuals who had imported cocaine for Caicedo, testified with regard to Caicedo's involvement in the conspiracy. Their testimony was not confined to those drug quantities which were charged in the indictment. Less than two (2) months later, on July 17, 1989, the court found Caicedo's base offense level to be 30 under § 1B1.3(a)(2) of the Guidelines. His base offense level was found to be 30 based upon (1) his involvement in the distribution of just over one (1) kilogram of cocaine, as charged in the indictment, and (2) his involvement in the importation or distribution of "at least 2.5 additional kilograms of cocaine not set forth in the indictment." Furthermore, the district court found that a two (2) point enhancement pursuant to § 3C1.1 was appropriate because Caicedo had obstructed justice when he committed perjury during his testimony before Magistrate Rosemond. According-

ly, the court concluded that Caicedo's adjusted base offense level was 32.

On August 15, 1989, Caicedo was sentenced to a concurrent term of 128 months on counts 1, 4, and 5 of the charging indictment. The court also imposed a four (4) year period of supervised release to be served upon the expiration of his sentence.

## II. ANALYSIS

### A. Competence to Stand Trial

The first (and primary) argument raised by Caicedo is that the district court erred in failing to conduct a "full" competency hearing in order to determine his fitness to stand trial. Citing the United States Supreme Court's opinion in *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), Caicedo urges this Court to reverse the district court. Caicedo's appellate counsel refers the court to the following occurrences at trial as evidence of Caicedo's incompetence which she argues should have alerted the court to the necessity of conducting a "full" competency hearing: (1) an early delay in his trial, and subsequent repeated interruptions, to permit Caicedo to consult with his counsel, (2) Caicedo's trial counsel's insistence that certain matters be put on the record (i.e., his advice to Caicedo and the decisions which Caicedo made after receiving such advice), (3) Caicedo's insistence that his trial counsel not object if the government called 404(b) witnesses against him, (4) Caicedo's statements regarding a government plot to coerce him to plead guilty, him and his family being killed, and that "they" were "weaving" to put him in prison, and (5) Caicedo's statements that the jury was comprised, in part, of police officers or DEA agents, and his statement that undercover Officer Triner was really a drug addict or informant who was paid either money or drugs for testifying against certain individuals. According to Caicedo, his difficulties at trial were only made worse by the fact that Spanish, rather than English, is his primary language.[2]

---

**2.** The record does not support Caicedo's claim that his ability to speak English in any way

hampered his ability to assist his counsel or understand the proceedings. Caicedo stated on

Caicedo suggests that in evaluating his competency, the court was obligated to consider matters other than his demeanor (such as medical opinions). His argument includes a brief discussion of paranoia, which appellate counsel suggests may be the appropriate diagnosis for her client.[3] While Caicedo acknowledges that the Seventh Circuit has held that the lack of a motion to conduct a competency hearing by counsel or the court is evidence of competency, *see United States ex rel. Rivers v. Franzen*, 692 F.2d 491, 499 (7th Cir.1982), he challenges this holding, stating that it fails to take into account matters such as crowded dockets, and his trial counsel's lackluster performance (which appellate counsel admits did not rise to the level of constitutional ineffectiveness). Caicedo argues that at a minimum this cause should be remanded to the district court with instructions to determine whether a "meaningful *nunc pro tunc* competency hearing is possible." Appellant's Brief, p. 43.

▪ A district court violates due process if it does not conduct a competency hearing "in the face of sufficient evidence to establish reasonable cause to believe that a defendant is mentally incompetent." *United States v. Garrett*, 903 F.2d 1105, 1116 (7th Cir.), *cert. den.*, — U.S. —, 111 S.Ct. 272, 112 L.Ed.2d 227 (1990). This obligation stems from the defendant's right not to be tried if he is incompetent. *Balfour v. Haws*, 892 F.2d 556, 559 (7th Cir. 1989). We will only set aside a district court's competency determination if the same is clearly erroneous. *United States v. Bennett*, 908 F.2d 189, 195 (7th Cir.), *cert. den.*, — U.S. —, 111 S.Ct. 534, 112 L.Ed.2d 544 (1990). "[W]hile our review is comprehensive, the district court retains a good deal of latitude in *how* it evaluates

the need for a formal competency hearing." *United States v. Garrett*, 903 F.2d at 1116 (Emphasis added).

During the beginning of Caicedo's trial, his trial counsel asked the court for five (5) minutes to confer "to make sure [he] completely understands what he wants to do here and the ramifications of everything that could happen." The court granted counsel's request. After Caicedo and his counsel conferred privately, counsel indicated that it was his desire to put on the record his advice to Caicedo and Caicedo's decisions with respect thereto. Counsel then proceeded to do just that. For example, he recounted how he had informed Caicedo that while he had the right to testify, that if he chose to assert that right and testified that he had gone with Bergmark to pick up vacuum cleaner parts, the government could impeach him by availing itself of his admission (which he made during his post-arrest proffer) that he went with Bergman to pick up cocaine.

▪ The first three (3) events noted by Caicedo as evidence of his incompetence to stand trial are simply the types of occurrences common to many criminal trials. Interruptions in a trial to permit counsel sufficient time to consult with the defendant, counsel asking the court to set out matters on the record to protect all concerned, and disagreements between a defendant and his counsel, hardly establish an inability to assist counsel or to undertand the nature of the proceedings. Counsel's request to put his advice to his client on the record is likely to have stemmed from a desire to protect himself from a subsequent post-trial allegation of ineffective assistance of counsel.

the record that he did not want simultaneous translation of his entire trial. R. 33. Instead, he only desired the translator's assistance when he could not understand something that was said. R. 33, 295. At one point early in the proceedings, the court informed him "Your English is awfully good. Your English seems extraordinary." R. 9. During a later sidebar conference, Caicedo's trial counsel remarked that "[h]e speaks English as well as I do, maybe better." R. 295. While this Court recognizes

the limitations inherent in reviewing a written record, we have carefully reviewed the transcript of Caicedo's trial and observe, based upon his discussions with the court and his counsel, that Caicedo appears to have been extremely articulate and, for the most part, quite rational.

3. This argument is not persuasive. Counsel admitted at oral argument that she was not aware of Caicedo having a history of mental disease.

■ Similarly, Caicedo's statements regarding a government plot to coerce him to plead guilty, him and his family being killed, and that "they" were "weaving" to put him in prison, all fail to establish that Caicedo was incompetent to stand trial. Each of these statements has been taken out of context to create the impression that Caicedo was mentally unbalanced at the time of his trial. However, a careful review of the record demonstrates that (1) Caicedo's statement regarding a government "plot" was a reference to his perception that the government was only threatening to call the § 404(b) witnesses to force him to plead guilty, (2) Caicedo's statement regarding him and his family being killed was simply an expression of his fear that if he cooperated with the government, as he had initially agreed to do, he could well provoke retaliation by other drug dealers, and (3) Caicedo's statement that they were "weaving" was simply a reference to his belief that the § 404(b) witnesses would be lying if they testified.

■ The district court apparently did not find Caicedo's statement to his trial counsel that certain members of the jury were police officers or DEA agents, and that undercover Officer Triner was really a drug addict/informant who was paid either money or drugs for testifying against certain individuals, to be persuasive evidence of his incompetence.[4] We agree. It was the district court's obligation to evaluate Caicedo's credibility when it came to these statements. The fact that Caicedo had accepted the jury initially only to challenge its composition at the eleventh hour supports the district judge's determination. It is important to note that the defendant did not inform his counsel of his suspicion that the jury was stacked with DEA agents until *after* the parties had begun closing arguments, and counsel did not inform the court

of Caicedo's suspicion until sentencing, which was of course *after* the jury had returned its verdict that Caicedo was guilty on each of the counts charged in the indictment. At the time the jury was selected, neither Caicedo nor his counsel stated that Caicedo was concerned that DEA special agents had been chosen to sit on the jury.

This Court has carefully reviewed the record and concludes that the district court did not err when it did not conduct a "full" competency hearing. The issue of whether Caicedo was competent to stand trial did not truly present itself until Caicedo's sentencing hearing. At that time, the court found that Caicedo was competent to be sentenced. This conclusion, as well as the district court's conclusion at sentencing that Caicedo was "able to understand the nature and consequences of the proceedings against him" and that "there [wa]s not reasonable cause to believe that he may be suffering from a mental disease or defect rendering him mentally incompetent," are supported by the record. Although certain aspects of Caicedo's suggested trial strategy were apparently not to his counsel's liking, this hardly establishes that he was not competent. Sentencing Transcript, 16.

■ While Caicedo's trial counsel stated at one point that he did not know if Caicedo could cooperate with him in the preparation of his defense, he went on to state that Caicedo was *"perfectly competent"* (Emphasis added). Although counsel eventually spoke to the issue of a competency hearing (during the sentencing phase of Caicedo's trial), he did not move for a formal hearing. Instead, he merely discussed the issue with the court. When the government suggested that there was insufficient indication that a hearing should be held, counsel stated "I am not suggesting there is." Sentencing Transcript, 7–8. The fact

---

**4.** Caicedo's statement that Officer Triner was not who she claimed to be also does not constitute evidence that Caicedo was incompetent to stand trial. That Caicedo was inherently suspicious of Officer Triner as a witness, after having dealt with her as one of his "customers," is perhaps to be expected. It should be noted in this regard that while counsel proceeds on the assumption that Caicedo believed that Officer

Triner was an informant being paid with drugs, the evidence merely reflects that he was suspicious and that he wanted his counsel to investigate Triner. In his letter of May 30, 1989, Caicedo asked his trial counsel to investigate Triner in order to determine whether she was an undercover officer or an informer. Defendant's Appendix 10, p. 1.

that Caicedo's trial counsel never formally requested a competency hearing is significant. Counsel's decision *not* to formally raise the issue of competency is "probative of whether *bona fide* doubt existed as to [Caicedo's] mental competence." *Balfour v. Haws*, 892 F.2d at 561. As Caicedo's trial counsel, he was obviously in a superior position in terms of "evaluat[ing Caicedo's] ability to understand the proceedings." *Id.* (*quoting United States ex rel. Rivers v. Franzen*, 692 F.2d at 500).

Counsel's statement that Caicedo was "perfectly competent," coupled with his decision not to argue that it was necessary to conduct a competency hearing, is yet another factor which convinces this Court that the failure to conduct a hearing was not error. *Chichakly v. United States*, 926 F.2d 624, 632–635 (7th Cir.1991).

### B. Obstruction of Justice Enhancement

Caicedo also argues that the district court erred in enhancing his sentence pursuant to § 3C1.1.[5] Specifically, he contends that (1) there is no support in the record for the conclusion that he was capable of forming the intent to obstruct justice (the statute uses the term "willfully" obstructs justice), (2) the court did not specifically find that he had the specific intent to obstruct justice, (3) the court could not enhance his sentence based upon obstruction of justice because it did not personally observe the perjury, and (4) there is "[a] question" as to whether the alleged false statements were material. Caicedo notes that at the time of his proffer, he was

without an interpreter and that he was not under oath.[6]

The standard of review that we must apply in resolving this particular challenge to Caicedo's sentence is well-settled:

> As with the various role-in-the-offense enhancements provided for in U.S.S.G. § 3B1.1, obstruction of justice enhancements under § 3C1.1 are reviewed under a clearly erroneous standard. [*United States v.*] *Feekes*, 929 F.2d [334,] 338 [ (7th Cir.1991) ]; *United States v. Teta*, 918 F.2d 1329, 1333 (7th Cir.1990); *United States v. Wheelwright*, 918 F.2d 226, 229 (1st Cir.1990); [*United States v.*] *Brown*, 900 F.2d [1098,] 1103 [ (7th Cir.1990) ].

*United States v. Jackson*, 935 F.2d 832, 849 (7th Cir.1991); *United States v. Osborne*, 931 F.2d 1139, 1153 (7th Cir.1991); *United States v. Hassan*, 927 F.2d 303, 309 (7th Cir.1991) (the Court applies this standard because the determination that a defendant obstructed justice is a finding of fact). As the Court explained in *United States v. Hagan*, 913 F.2d 1278, 1283 (7th Cir.1990):

> The sentence imposed will be affirmed if the district court properly applied the guidelines to findings of fact that do not leave us with the "definite and firm conviction that a mistake has been committed."

*Id.* (*citing United States v. White*, 903 F.2d 457, 460 (7th Cir.1990)) (Other citations omitted).

---

**5.** Section 3C1.1 provides as follows:

> If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level by two levels.

> While Application Note 1 to this guideline contains a partial list of conduct which will support an obstruction of justice enhancement, such as destroying evidence or providing a false statement to a *sentencing* court, the list is not considered exclusive. *See, United States v. Hagan*, 913 F.2d 1278, 1284 (7th Cir.1990).

**6.** This Court has already concluded that any difficulty Caicedo may have had in speaking English was minimal and did not hamper his

ability to understand the proceedings against him. *See* footnote 2. The fact that Caicedo did not have a translator when he was questioned does not lead to the conclusion that he was unaware of what was occurring.

Caicedo focuses on his statement to the investigating officer when he argues that the obstruction of justice enhancement should not lie because his statement was not made under oath. Notably, however, Caicedo's sentence was enhanced based upon his having committed perjury when he testified before the Magistrate during the hearing on his motion to suppress. His statement to the investigating officer was simply used by the government to impeach him when he testified that he was going to pick up vacuum cleaner parts.

**1234**

The facts underlying this enhancement are easily summarized. On January 10, 1989, Caicedo appeared before Magistrate (now Magistrate Judge) Thomas Rosemond for a hearing on his Motion to Suppress. At that time, Caicedo testified regarding the events that occurred when he was arrested (including his allegation that the arresting officers physically assaulted him). On cross-examination, the government inquired into Caicedo's actions prior to his arrest. Caicedo testified that on July 14, he had given Bergmark a ride to the corner of Irving Park and Lincoln because Bergmark had wanted to go to that location to pick up a package of vacuum cleaner parts. Significantly, Caicedo denied that he had gone to that location to obtain a kilogram of cocaine. After Caicedo made these statements, the government, in order to impeach him, inquired into his August 2, 1988 post-arrest proffer[7] to an assistant United States attorney during which Caicedo stated that he had made the arrangements to pick up the kilogram of cocaine on July 14, and had gone with Bergmark for that purpose. When confronted with his earlier statement, Caicedo admitted that he had told the assistant United States attorney that he had previously made arrangements to pick up the kilogram of cocaine on July 14th.

■ The district court's § 3C1.1 enhancement is not vulnerable to attack on the ground that there was no support in the record for a conclusion that it was "willful," or on the ground that the court failed to make the requisite finding with respect to "willfulness." To begin with, we have already rejected Caicedo's argument that he was incompetent. We discern no evidence which compels the conclusion that he was incapable of forming the requisite intent to obstruct justice. While the court did not specifically state that Caicedo willfully obstructed justice, it is clear from its written sentencing opinion that the court found that Caicedo's perjured testimony was "calculated to mislead or deceive."

7. The terms of the proffer provided that the government could not use Caicedo's statement against him during its case-in-chief but that it

■ Caicedo cites a pre-Guidelines case, *United States v. Glover*, 608 F.Supp. 861 (D.C.N.Y.), *aff'd without opinion*, 779 F.2d 39 (2d Cir.1985), *cert. den.*, 475 U.S. 1026, 106 S.Ct. 1223, 89 L.Ed.2d 333 (1986), as support for the proposition that the court could not enhance his sentence pursuant to § 3C1.1 because the sentencing judge did not personally observe the alleged perjured testimony. Caicedo's argument is without merit. While the perjured testimony in the present case occurred during a proceeding which was conducted by a magistrate, that fact clearly does not affect the validity of the enhancement. In this Circuit, a defendant's sentence may be enhanced if he commits perjury when testifying before a magistrate. *United States v. Hassan*, 927 F.2d at 309; *United States v. Mata–Grullon*, 887 F.2d 23, 24 (1st Cir.1989) (*per curiam*) (*cited with approval in United States v. Jordan*, 890 F.2d 968, 973 (7th Cir.1989)); *See also United States v. Ojo*, 916 F.2d 388, 392–394 (7th Cir.1990).

While lying in a proceeding before a magistrate was not explicitly mentioned in the Guideline or its Application Notes at the time Caicedo was sentenced, that fact does not preclude the Guideline's application. As the Court explained in *United States v. White*, 903 F.2d at 461, "[t]he drafters of the commentary to the Sentencing Guidelines recognized the obvious inability of any group drafting guidelines to encompass and list each and every example of obstruction of justice[.]" In order to "clarify the operation" of § 3C1.1, both the Guideline and its application notes were recently amended. U.S. Sentencing Comm'n., *Guidelines Manual* app. C, at C. 193 (Nov.1990). Since November 1, 1990 (the effective date of the amendment), Application Note 3(f) has explicitly provided that an obstruction of justice enhancement will lie where a defendant provides materially false information "to a judge *or magistrate*." (Emphasis added). To paraphrase the Fifth Circuit in *United States v.*

could use it to impeach him if he testified differently at trial.

*Aguilera–Zapata,* 901 F.2d 1209, 1213 (5th Cir.1990), "[b]ecause this amendment was intended to clarify [rather than make substantive changes, the Court] may consider the amended language [of the Application Note] even though it was not effective at the time of the commission of the offense in question."

■ Caicedo's suggestion that there is "[a] question" as to whether the alleged false statements were material in this case, ignores the fact that § 3C1.1 "provides an increase for *attempts* to obstruct justice as well as actual obstruction of justice." *United States v. Gaddy,* 909 F.2d 196, 199 (7th Cir.1990) (Emphasis original) (giving a false name to the FBI and lying about arrest and fingerprint record supports two point increase for obstruction of justice). We see no reason to treat defendant Caicedo, who provided a false statement with respect to his participation in a criminal act, differently than the defendant in *Gaddy,* who provided the FBI with a false name and false information regarding his criminal record.[8] Enhancement in both cases turns upon the fact that the defendants would have substantially interfered with the administration of justice had they succeeded. *Id.*

**C. Consideration of Uncharged Conduct at Sentencing**

Caicedo's third argument is that the district court erred in enhancing his sentence pursuant to § 1B1.3(a)(2).[9] Specifically, he argues that the court erred in calculating his base offense level because it included in its computation cocaine from what it found to be related transactions despite the fact that the sources of the testimony regarding these additional amounts of cocaine were two (2) biased witnesses. Codefendant Bergmark, who would otherwise have received a significantly higher sentence had he not entered into a plea agreement with the government, and Kay Cool, the individual who assisted Caicedo in importing his cocaine, both testified at Caicedo's sentencing hearing. They testified regarding the additional quantities of cocaine which Caicedo arranged to import and distribute.

Numerous reported decisions in, as well as outside of, this Circuit have held that a sentencing court may consider related conduct in a Guidelines case. In *United States v. Salva,* 894 F.2d 225, 230 (7th Cir.), *corrected by* 902 F.2d 483 (7th Cir.1990), the Court explained that "[i]t is now the clear rule in this circuit that a court may consider activity of which the defendant has not been charged or convicted in determining the appropriate Guidelines sentence, so long as that activity is 'part of the same course of conduct or common scheme or plan as the offense of conviction.'" *Id.* (*citing,* U.S.S.G. § 1B1.3(a)(2), *United States v. White,* 888 F.2d 490 (7th Cir. 1989), and *United States v. Vopravil,* 891 F.2d 155, 157–78 & n. 4 (7th Cir.1989)); *Accord, United States v. Rodriguez–Nuez,* 919 F.2d 461, 464 (7th Cir.1990). "[W]hen the Guidelines provide tables that cumulate the amount sold or stolen, any acts that 'were part of the same course of conduct or common scheme or plan as the offense of

**8.** In *United States v. Jackson,* 935 F.2d 832, 849 (7th Cir.1991), the Court reversed an obstruction of justice enhancement on the ground that the defendant had not provided a *materially* false statement to a law enforcement officer which *significantly* obstructed justice. *Jackson,* however, is distinguishable from the present case because in that case the government was unable to identify a single false statement made by the defendant (his statements regarding one of his coconspirators were simply not as complete as they could have been), or to establish that the defendant did anything "to throw the police off the scent" (the Court observed that not being as helpful as you can be does not indicate that you have impeded an investigation). *Id.*

**9.** This Guideline provides, in pertinent part, as follows:

Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level ... shall be determined on the basis of the following:
(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction....

§ 3D1.2(d) provides that drug offenses and other crimes which are based "primarily on quantity" are to be grouped together. *See* Application Note 6.

**1236**

conviction' should be included in the computation of the amount on which the offense level depends, whether or not the defendant was convicted of selling or stealing these additional amounts." *United States v. Ebbole*, 917 F.2d 1495, 1496 (7th Cir. 1990) (*quoting United States v. White*, 888 F.2d at 497).

While Caicedo does not directly challenge the district court's *authority* to consider related conduct in the sentencing process, he does suggest (1) that there is reason to doubt the district court's factual findings, because the government's witnesses were biased, and (2) that the burden of proof ought to be higher, inasmuch as "[t]he Guidelines are ambiguous as to what constitutes relevant conduct and common schemes." Appellant's Brief, p. 40. Neither argument withstands scrutiny.

 Caicedo's first argument is without merit because it is based upon pure speculation. The district court quite clearly was not required to accept Caicedo's testimony that he did not conspire to distribute the additional amounts of cocaine. *United States v. Rodriguez–Nuez*, 919 F.2d at 465. Conversely, it was the court's prerogative to assess the credibility of the witnesses and to credit the testimony of Bergmark and Cool. *United States v. Ruiz*, 932 F.2d 1174, 1183, n. 7 (7th Cir. 1991); *United States v. Escobar–Mejia*, 915 F.2d 1152, 1154 (7th Cir.1990). The court was aware of the fact that they had entered into agreements with the government which required their testimony at Caicedo's trial, and the fact that Bergmark was a drug user himself who had been using drugs during the time period covered by his testimony. Caicedo's second argument ignores the fact that sentencing courts now have the benefit of numerous decisions interpreting the Guidelines in general and § 1B1.3(a) in particular. In light of cases such as *United States v. Rodriguez–Nuez*, 919 F.2d at 464, and *United States v. Ebbole*, 917 F.2d at 1496, n. 3, which make clear the fact that the courts in this Circuit are to consider the temporal, spatial, and logical relationship between criminal acts in determining

whether they are "part of the same course of conduct or common scheme or plan as the offense of conviction," the Court must reject as unfounded counsel's argument that defendants lack guidance in determining what related conduct encompasses.

**D. Failure to State Reason for Sentence Imposed**

 Caicedo's fourth argument is that the district court failed to state, in accordance with 18 U.S.C. § 3553(c)(1), the reasons for the sentence imposed and the reason (which is required for sentences exceeding a range of 24 months) for choosing a sentence at a particular point in the range.

This Court finds that while 18 U.S.C. § 3553 requires such a statement of reasons, Caicedo is not entitled to a remand for resentencing. Essentially, we agree with the government's argument that this issue has been waived because it was not raised at the time of sentencing, *United States v. Heilprin*, 910 F.2d 471, 474 (7th Cir.1990), and that notwithstanding said waiver the district court satisfied the statute by incorporating its twenty-six (26) page sentencing opinion, which was filed prior to the imposition of sentence. The district court's written opinion specifically addressed those factors which are to be considered at sentencing, such as the nature and circumstances of the offense, and it provided the court's reason for setting Caicedo's sentence above the minimum sentence of 121 months (its reason being that the defendant had distributed a quantity "far greater" than the minimum required for a base offense level of 30).

**E. Improper Reference in Presentence Investigation Report**

 Finally, Caicedo argues that the probation officer who completed his presentence investigation report included in the report her conclusion with respect to the propriety of the then-proposed § 3C1.1 enhancement, in violation of a directive of the Probation Division of the Administrative Office of U.S. Courts. The government urges the Court to reject this argument

both because it has been waived, as a result of Caicedo's failure to raise it below, and because the text upon which it is based is an internal directive applicable only to probation officers.

The Court concludes that it will not consider this particular issue independently because it constitutes little more than a reformulation of Caicedo's claim that the district court erred in enhancing his sentence pursuant to § 3C1.1. In *United States v. Madewell*, 917 F.2d 301, 306, n. 5 (7th Cir. 1990), the defendant argued both that the district court had erred in its Guidelines analysis, and that the court had erred in relying upon the interpretation of the Guidelines which was contained in the probation officer's report. The Court refused to consider defendant Madewell's "second" argument, reasoning as follows:

> Because the [district] court adopted the guidelines analysis proposed in the probation officer's report, there is no need for us to treat a direct challenge to the court's decision and a challenge to [its] "reliance" on the probation officer's report differently—the question common to both formulations is whether or not the court erred in its interpretation of the guidelines. Thus, we will not separately consider defendant's claim that the district court erred in "relying" on the Probation Officer's report.

*Id.* Although Caicedo does not actually go so far as to state that the district court relied upon the probation officer's § 3C1.1 analysis and conclusion, his argument that the probation officer violated a directive by including the same in the report, only makes sense in the context of the present criminal appeal if Caicedo is implicitly arguing that Judge Rovner relied upon the probation officer's analysis and conclusion in enhancing Caicedo's sentence based upon obstruction of justice. We conclude, as did the *Madewell* Court, that what has been presented as two (2) separate issues is in reality a single issue. Because we have already examined the issue of enhancement under § 3C1.1 in some detail, we decline the invitation to retrace our steps.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that the district court did not err in failing to conduct a "full" competency hearing, and that Caicedo's various challenges to his sentence are without merit. The defendant-appellant's conviction and sentence are therefore AFFIRMED.