977 F.2d 583
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Billy K. GROCE and Kenneth Taylor, Defendants-Appellants.
 Nos. 91-5999, 91-5914.
 United States Court of Appeals, Sixth Circuit.
 Oct. 15, 1992.
 
 Before KEITH and BATCHELDER, Circuit Judges, and WELLFORD, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Kenneth Taylor ("Taylor") and Billy Groce ("Groce") (collectively "appellants"), received sentences of fifty five (55) months and one hundred and thirty six (136) months, respectively, following guilty pleas to a conspiracy to unlawfully distribute, or possess with intent to distribute, marijuana in violation of 21 U.S.C. § 846. Appellants appeal the sentences imposed by the district court. For the reasons stated below, we AFFIRM.
 
 I.
 
 2
 On January 31, 1991 the Drug Enforcement Administration ("DEA") seized two wooden crates of marijuana weighing 431 pounds in Laredo, Texas. The crates' bill of lading indicated that they were being shipped to "Richard Moore, 625 Brandan Drive, Nashville, Tennessee." The agents executed a control delivery of the crates to a transportation company in Nashville which was cooperating with the investigation.[1]
 
 
 3
 Agents surveiling the transportation company observed Taylor and Groce drive on to the company's premises. On February 8, 1991 DEA agents arrested Taylor upon his acceptance of delivery of 431 pounds of marijuana. DEA agents arrested Groce as he drove away from the company premises in a different vehicle.
 
 
 4
 Upon his arrest, Taylor made the following statement to DEA Special Agent Jay Myles. A statement prepared by Special Agent Jay Myles read as follows:
 
 
 5
 After SA Myles advised them again of their Miranda rights and waiver thereof, both Kenneth Taylor and Billy Kendall Grose (sic) confessed their involvement in a conspiracy to import marijuana from Texas to Tennessee. Per Taylor the total purchase price for the approximately 350 pounds of marijuana was to be $390,000.00 payable to a group of Mexican individuals believed to be lodged at the Shoney's Inn, Lebanon, Tennessee. Taylor stated the group consisted of two Mexican females and one Mexican male who traveled to Nashville, Tennessee from Laredo, Texas to obtain payment for the shipment of marijuana. Taylor stated that he would call his mother, Lola G. Taylor, for messages or information regarding the whereabouts of the Mexicans.
 
 
 6
 In addition, Taylor stated that the individual who accepted the first two telephone calls regarding the whereabouts of "Richard Moore" was an individual identified as Dick Mooney who was being paid compensation of approximately $1000.00 for his knowing participation for previous shipments of marijuana into Tennessee from Texas. Taylor stated Mooney previously permitted his property to be used as a temporary storage facility for marijuana imported into Tennessee from Texas.
 
 
 7
 Agent Myles also testified that Taylor informed him that three Mexican co-conspirators were staying at a Nashville hotel, that Taylor admitted the marijuana was to be hidden at a "stash house" maintained by "Mr. Mooney," and that Taylor said part of the shipment was to be delivered to an individual named Charles Parish.
 
 
 8
 On March 21, 1991 Taylor gave Special Agent Myles a "proffer statement" in the presence of his counsel, Mr. Jack Lowery. The "proffer statement" included a provisions that "the information taken or derived from Mr. Taylor during the interview would not be used against him in any fashion." During this statement, Taylor admitted that an additional 125 pounds of marijuana was sold in this February transaction.[2]
 
 
 9
 At Groce's sentencing hearing, Special Agent Jay Myles testified that Groce confessed the following:
 
 
 10
 That he was thirty-nine years of age and had a business in Cookeville, Tennessee, he also stated that he had been arrested once before for 3/4 of a pound of marijuana and ten grams of cocaine in the Putnam area by the police.
 
 
 11
 He also stated that he had been stopped by DEA in San Antonio, Texas at the airport, where approximately in excess of $124,000.00 was seized. He also indicated that he and Taylor were to pick up the marijuana at the warehouse and take it to a stash house.
 
 
 12
 Groce also indicated that for his participation for the loan of the truck which belongs to his father, he was to transport the marijuana to an area, and at that time he was to receive four to five pounds of marijuana. He also said that he knew marijuana customers--well, we--it was asked--Morgano asked Mr. Groce did he know the marijuana customers. And he responded that Charles Parish was to receive at least 100 pounds of the marijuana that was just recently coming in.
 
 
 13
 Also, Mr. Groce stated that he was the one to purchase a cashier's check for $210.00, which was used by Taylor to pick up the crate of marijuana--the two crates of marijuana which was at the loading docks.
 
 
 14
 Moreover, Agent Myles testified that Groce purchased the cashier's check used to pay the shipping company, and that Groce was present during a meeting when Taylor, Groce and Richard Mooney (owner of the "stash house") discussed who would pick up the marijuana from the transportation company.
 
 
 15
 On April 15, 1991, the appellants pleaded guilty to the conspiracy charge in violation of 21 U.S.C. § 846. Taylor was sentenced to fifty-five months (55) and four years supervised release. Groce received a sentence of one hundred thirty-six months (136) and four years supervised release. This timely appeal followed.
 
 II.
 
 16
 Taylor contends that the district court improperly considered self-incriminating information protected by U.S.S.G. § 1B1.8 to enhance his offense level computation. Specifically, he argues that the district court failed to honor the plea agreement of March 21, 1991. We disagree.
 
 
 17
 The pertinent paragraph of the plea agreement states as follows:
 
 
 18
 The United States and the defendant agree that the defendant's base offense level for this violation of Title 21, United States Code, Section 846 shall be 26. (See U.S.S.G. Section 2D1.1(a)(3). The applicable base offense level of 26 has been determined by applying the weight of the marijuana involved in this case, approximately 431 pounds, to the "drug quantity table" found at U.S.S.G. Section 2D1.1(c). The government agrees that for purposes of prosecution it will only consider the weight or quantity of marijuana involved in the instant case, i.e. 431 pounds, to determine the applicable base offense level. Therefore, pursuant to U.S.S.G. Section 1B1.8, the government agrees that any self-incriminating information provided by the defendant pursuant to the defendant's "substantial assistance" to and cooperation with the government outlined below will not be used against him in determining the applicable guideline range for sentencing, or as a basis for an upward departure from the guideline range. The defendant understands that a the final decision as to the applicable guideline range rests with the District Court.
 
 
 19
 The district court stated that it based its finding on Taylor's statement on February 8, 1991 and the statement of co-defendant Bermudez on February 26, 1991. Indeed, Taylor's statement was made before he entered into the plea agreement to cooperate and provide assistance to the government. Hence, we find that the plea agreement's restrictions did not apply to information obtained prior to March 21, 1991, the day Taylor and the government entered into the plea agreement.[3]
 
 III.
 
 20
 Groce argues that the district court erred when it increased his offense level 2 levels for obstruction of justice, based upon false statements he allegedly made at the guilty plea proceeding.
 
 
 21
 Under U.S.S.G. § 3C1.1, the district court has the discretion to enhance the defendant's sentence as follows:
 
 
 22
 If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level 2 levels.
 
 
 23
 The amended commentary to this section, Application Note 1, states specifically that perjurious denial of guilt under oath is not excluded from application of the enhancement. In addition, Application Note 3(f) states that a defendant who provides materially false information to a judge is subject to enhancement under U.S.S.G. § 3C1.1. We review the district court's application of this enhancement under the clearly erroneous standard. United States v. Robert Williams, 940 F.2d 176, 181 (6th Cir.), cert. denied, 112 S.Ct. 666 (1991).
 
 
 24
 At his detention hearing, Groce voluntarily testified that he never brought marijuana to Tennessee from trips to Texas, and that he never confessed to DEA agents. In addition, Groce stated that he was present at the scene "to have my hair cut" and that he was only in the vehicle with Taylor since he "hadn't talked to Taylor for over four or five weeks." (Detention Hearing, at 17-18).
 
 
 25
 During his sentencing hearing, Groce again was sworn to an oath and voluntarily testified as a witness in his own behalf. During sentencing Groce acknowledged minimal culpability. He claimed that he was merely a "bag man," and that he never negotiated the purchase or procurement of marijuana. (Sentencing Hearing, at 17). Groce testified that he did not become aware of the shipment until "the night before" when Taylor contacted him to borrow his truck to transport the marijuana. (Sentencing Hearing, at 5-7). He denied negotiating marijuana deals with the co-defendants, insisting that he "never talked to them ... (and) never negotiated price or done any kind of deal with them." (Sentencing Hearing, at 33-34). He denied ever receiving any delivery of marijuana from co-defendants Bermudez or Guerra.
 
 
 26
 Special Agent Myles' testimony contradicted Groce's testimony in all material respects. Specifically, Agent Myles testified that the Groce confessed his involvement in this marijuana transaction after being advised of his rights shortly after his arrest on February 8, 1991. According to Special Agent Myles, Groce confessed, among other things, that he provided his truck to Taylor for purposes of transporting the marijuana from the warehouse to the "stash house," that Charles Parish was to receive at least 100 pounds of marijuana, and that Groce facilitated this transaction by purchasing a cashier's check for payment of the freight charges. This testimony is contradictory to Groce's testimony at his detention hearing, where he insisted that he did not confess. In addition, it is different from Groce's assertion during his sentencing hearing that he knew nothing about this marijuana transaction. In fact, Agent Myles testified that Groce attended a meeting, during which Taylor, Groce, and Mooney discussed who would transport the marijuana from the transportation company to the "stash house."
 
 
 27
 Groce's testimony that he "never talked to" Bermudez or Guerra about arranging marijuana shipments was also contradicted by Special Agent Myles. Special Agent Myles testified that he confirmed and corroborated through documents, as well as interviews with Taylor, Guerra and Bermudez, that Taylor and Groce were in Laredo, Texas on December 11, 1990 meeting with Bermudez and Guerra at the LaQuinta Inn to arrange a specific shipment of marijuana. Agent Myles also documented another occasion in which Groce was in Texas and instructed Guerra and Bermudez as to how to ship marijuana through San Marcos, Texas.
 
 
 28
 We find that the district court correctly ruled that Groce's testimony warranted a two level enhancement for obstruction of justice. Additionally, the district court correctly determined that acceptance of responsibility was not applicable as set forth in U.S.S.G. § 3E1.1 since Groce's testimony during the detention hearing and sentencing hearing reflects that he did not make a "voluntary and truthful admission to authorities of involvement in the offense" required for a finding of acceptance of responsibility.
 
 IV.
 
 29
 Groce argues next that the district court finding that he had a managerial or supervisory role in the offense was clearly erroneous.
 
 
 30
 Section 3B1.1(b) provides for a three level increase if the defendant was "a manager or supervisor" but not "an organizer or leader" and "the criminal activity involved five or more participants or was otherwise extensive." The factors to be considered in distinguishing the roles are:
 
 
 31
 the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.
 
 
 32
 U.S.S.G. § 3B1.1, application note 3.
 
 
 33
 In United States v. Paulino, 935 F.2d 739 (6th Cir.), cert. denied, 112 S.Ct. 315 (1991), the court upheld a two level enhancement for a leadership role when a defendant "wired proceeds, rented an apartment, automobiles and a mobile telephone in the name of other individuals on behalf of the conspiracy." Id. at 758.
 
 
 34
 Here, Groce was involved to the same extent as, if not more than, the defendant in Paulino. According to testimony, Groce and Taylor made several trips to Texas to coordinate meetings with Bermudez and Guerra. Agent Myles testified that he verified, through record receipts and interviews of Taylor, Bermudez and Guerra, that Groce met with Bermudez and Guerra, in Laredo, Texas on December 11, 1990 at the LaQuinta Inn to arrange a shipment of marijuana. On another occasion, as was mentioned above, Groce instructed Bermudez and Guerra as to how to successfully ship marijuana through San Marcos, Texas. In addition, Groce was apprehended in the San Antonio Airport with approximately $124,000 United States currency which was to be used to finance the purchase of a marijuana shipment. Finally, Groce purchased a cashier's check to pay the freight charges so that Taylor could accept delivery of the marijuana.
 
 
 35
 Thus, we conclude that the district court's determination that Groce's role in the offense met the criteria of Section 3B1.1(b) was not clearly erroneous.
 
 V.
 
 36
 Finally, Groce argues that the district court failed to state in accordance with 18 U.S.C. § 3553(c)(1) the reasons for the sentence imposed and the reason for choosing a sentence at a particular point in the range when the sentence exceeds a range of 24 months.
 
 
 37
 In United States v. Caicedo, 937 F.2d 1227 (7th Cir.1991), the court stated that while 18 U.S.C. § 3553 requires such a statement, a defendant waives this issue if it is not raised at the time of sentencing. Id. at 1236. Here, Groce failed to object at sentencing. Therefore, we hold that Groce waived this issue.
 
 VI.
 
 38
 For the above reasons, we AFFIRM the decision of the Honorable John T. Nixon, Chief Judge of the United States District Court for the Middle District of Tennessee.
 
 
 
 [1]
 DEA Agents placed two recorded telephone calls to "Richard Moore" whereby "Dick Mooney" answered the telephone and acknowledged that Mr. Moore was expecting said shipment
 
 
 [2]
 The guideline calculation, however, did not include this amount since the information was provided as a result of the proffer statement
 
 
 [3]
 According to Taylor, however, "substantial assistance" began on February 8, 1991. This is incorrect as appellant did not provide a "proffer statement" until March 21, 1991