**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Joseph VOPRAVIL,**
**Defendant–Appellant.**

**No. 89–1837.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 18, 1989.

Decided Dec. 6, 1989.

Patricia J. Gorence (argued), Paul Kanter, Asst. U.S. Attys., Office of the U.S. Atty., Milwaukee, Wis., for U.S.

Marna M. Tess–Mattner (argued), Jeffrey A. Kaufman, Gimbel, Reilly, Guerin & Brown, Milwaukee, Wis., Ben Levy, Cedarburg, Wis., for Joseph Vopravil.

Before CUMMINGS, CUDAHY, and EASTERBROOK, Circuit Judges.

CUMMINGS, Circuit Judge.

Joseph Vopravil pled guilty to one count of an indictment charging possession with intent to distribute and distribution of one ounce of cocaine, in violation of 21 U.S.C. § 841(a)(1). He was sentenced to four years in prison, followed by three years of supervised release and was fined $10,000 pursuant to the Sentencing Guidelines promulgated under the Sentencing Reform Act. He appeals from this sentence, arguing that the district court misapplied the Guidelines. We affirm.

## BACKGROUND

On August 31, 1988, Vopravil was indicted by a federal grand jury on two counts of possession with intent to distribute and distribution of cocaine (Counts 1 and 2) in violation of 21 U.S.C. § 841(a)(1), and on one count of use of a telephone to facilitate possession with intent to distribute and distribution of one kilogram of cocaine (Count 3) in violation of 21 U.S.C. § 843(b). Pursuant to a plea agreement entered into on November 4, 1988, Vopravil pled guilty to Count 2 of the indictment and the prosecutor agreed to dismiss the other two counts.

The facts as set forth in the record indicate that in April 1988 a confidential informant told government agents that he had been purchasing personal use quantities of cocaine from one Rick Kaiser, who in turn purchased the cocaine from Vopravil. Acting on behalf of the government, the informant contacted Kaiser and told him that he was interested in purchasing a kilogram of cocaine from Vopravil. Kaiser made arrangements for the informant to speak to Vopravil directly. Shortly thereafter, Vopravil telephoned the informant and stated that he would supply the informant with a kilogram of cocaine and gave the informant his home telephone number. On May 16, 1988, and again on May 23, 1988, Vopravil sold one ounce of cocaine to the informant. These two sales are the subject of Counts 1 and 2 of the indictment. Negotiations for the sale of a kilogram of cocaine continued, and the transaction was scheduled for June 27, 1988. On that date Vopravil met the informant at the designated meeting place. An undercover agent accompanied the informant to this meeting. Vopravil indicated that he wanted to complete the transaction at another location, but the under-

cover agent objected. At that point Vopravil fled.[1]

Vopravil specifically admitted all of these facts in the following exchange with District Judge Warren during the November 4, 1988, proceedings at which the judge accepted the plea agreement:

THE COURT: Did you have some conversation with [the informant] in which you agreed that you could supply a kilo?

VOPRAVIL: Yes.

.    .    .    .    .

THE COURT: And did you subsequently, * * * on May 16, 1988, have a transaction in which you sold him one ounce of cocaine?

VOPRAVIL: Yes, I did.

THE COURT: And later on May 23, 1988, did you meet the same individual and after a phone arrangement sell him another ounce of cocaine?

VOPRAVIL: Yes, I did.

Vol. 1 Tr. 20.

Judge Evans, the sentencing judge,[2] found that for the purpose of establishing the base offense level, the negotiations for the sale of a kilogram of cocaine charged in Count 3 was conduct "clearly related" to the Count 2 conduct to which Vopravil pleaded guilty. As a result he added this kilogram of cocaine to the two ounces charged in Counts 1 and 2 to arrive at a base offense level of 26.[3] The judge, without objection from the government, then reduced this base offense level by two for acceptance of responsibility under Guide-

line Section 3E1.1(a). The adjusted base offense level was therefore 24, with an applicable sentencing range of 51–63 months. The judge departed downward from this range, again without government objection, and sentenced Vopravil to 48 months. Vopravil argues that the kilogram should not have been included in the computation of his base offense level. If it had been excluded, Vopravil's unadjusted base offense level would have been 16 (14 with a two-level adjustment for acceptance of responsibility) with a sentencing range of 15–21 months.

## DISCUSSION

■ A trial court's sentence under the Federal Sentencing Guidelines will be upheld so long as the Guidelines were correctly applied to findings of fact that were not clearly erroneous. *United States v. Sarasti,* 869 F.2d 805 (5th Cir.1989).

This Court has recently addressed the issue of aggregation for sentencing purposes of amounts of drugs from counts that do not result in conviction. *United States v. White,* 888 F.2d 490 (1989). In *White* this Circuit joined the Fourth, Fifth, Sixth, Eighth, and Eleventh Circuits in holding that Sections 1B1.3(a)(2) and 3D1.2(d) of the Guidelines provide for cumulation of amounts of drugs from any acts that "were part of the same course of conduct or common scheme or plan as the offense of conviction," whether or not the defendant was convicted of possession or distribution of these additional amounts.[4]

1. The government and the presentence report state that Vopravil fled when he "observed a surveillance officer." At oral argument in this case Vopravil's appellate counsel characterized this reason for Vopravil's departure as "pure speculation," but offered no alternative reason. *Resolution of this difference of opinion is not germane to the outcome of this case.*

2. The case was transferred from Judge Warren to Judge Evans by a January 4, 1989, order.

3. One ounce of cocaine equals approximately 28.35 grams. The judge added the amounts from the two one-ounce transactions to the kilogram from the uncompleted transaction to arrive at a base amount of 1.06 kilograms. Applying Guideline § 2D1.1(a)(3) and the drug quan-

tity table in § 2D1.1(c), this amount of cocaine placed Vopravil at a base offense level of 26.

4. See *United States v. Williams,* 880 F.2d 804 (4th Cir.1989) (defendant pled guilty to and convicted of one drug-related count but sentenced on the basis of that count plus quantities of drugs in other, dismissed, counts); *United States v. Taplette,* 872 F.2d 101 (5th Cir.1989) (same); *United States v. Ykema,* 887 F.2d 697 (6th Cir. 1989) (same); *United States v. Allen,* 886 F.2d 143 (8th Cir.1989) (same); *United States v. Scroggins,* 880 F.2d 1204 (11th Cir.1989) (defendant pled guilty to and convicted of one count of postal-stamp vending machine theft, but sentenced on the basis of a dismissed count of theft of another machine and uncharged thefts of still other machines). Contra *United States v. Res-*

Two separate issues arise in the application of this standard. The first is whether Count 3 was in fact "part of the same course of conduct or common scheme or plan" as the conviction count. The second is whether the amount of drugs involved in Count 3 was ascertainable.

■ With respect to the first issue, the government argued, and by reaching a base offense level of 26 Judge Evans agreed, that Vopravil's "course of conduct" was to engage in two one-ounce sales of cocaine in preparation for a later one-kilogram sale. At the sentencing hearing Judge Evans found that the kilogram from the aborted transaction was "clearly related conduct" (Vol. 2 Tr. 9). Guideline Section 1B1.3(a)(2) does not employ the language "clearly related." Rather, the verbiage of that section refers to whether the conduct to be considered in setting the defendant's base offense level was "part of the same course of conduct or common scheme or plan as the offense of conviction" (n. 4 *supra*), which the judge and defense counsel have paraphrased as "clearly related." At oral argument, counsel for the government contended that Judge Evans did find that the planned kilogram transaction was "part of the same course of conduct" (§ 1B1.3(a)(2)) as the one-ounce sale on which Vopravil was convicted. The record shows either term applied to Count 3 in connection with the earlier counts. The three transactions occurring just over a one-month period were part of one enterprise as reflected in the judge's "clearly related" finding, and we affirm the district court's resolution of this issue because the "clearly related" finding was synonymous with the language of § 1B1.3(a)(2) and not shown to be clearly erroneous. With their heavy caseloads, district judges cannot be expected to be perfectly precise in terminology.

■ With respect to the second issue, we conclude that the amount of drugs involved in Count 3 that did not result in conviction was sufficiently ascertainable as one kilogram. The presentence report showed that on three occasions in 1986 Vopravil purchased one kilogram of cocaine from a Daniel Guerrera for between $32,000 and $36,000. Presentence Report p. 7. Consistent with that report Vopravil admitted to Judge Evans that he "Got up to a kilo from Guerrera on occasion * * *." Vol. 2 Tr. 36. His counsel admitted to the district court that "The count [Count 3 involving the one kilogram of cocaine] was going to be committed." *Id.* Moreover, counsel admitted that defendant "doesn't dispute the fact * * * of this kilogram negotiation and that incident" on June 27, 1988, when the sale of the kilogram was aborted. Presentence Report p. 8. The district judge offered Vopravil an opportunity to dispute the one-kilogram transaction specified in Count 3 (Vol. 1 Tr. 9), but the offer was not accepted. At a prior hearing involving defendant's guilty plea, in a colloquy with the court, Vopravil admitted that in a telephone conversation with a male informant he agreed to supply the informant with a kilo of cocaine. *Id.* at 15, 20. These factors satisfy the *White* requirement:

> The Guidelines treat success and failure, conviction and no conviction, alike in drug cases, so long as the amounts are ascertainable.

888 F.2d at 499. *White* has rejected the argument in defendant's briefs that in sentencing him it was improper to consider the one kilogram in Count 3 because there was no conviction thereunder. We adhere to

---

*trepo,* 883 F.2d 781, 782 (9th Cir.1989) ("conduct that does not result in a criminal conviction should not be considered ... in fixing the appropriate guideline range for a narcotics offense."). We declined to follow *Restrepo* in *White.*

Section 1B1.3(a)(2) provides that the sentence "shall be determined on the basis of the following: ... (2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction; ...."

Section 3D1.2 is entitled "Groups of Closely–Related Counts" and subsection (d) thereof requires grouping "if the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved or some other measure of aggregate harm,...."

*White* and reaffirm our rejection of this argument.

Vopravil also submits that Application Note 12 (mistakenly termed "11" in the briefs of both parties) of Guideline Section 2D1.1 dealing with base levels for offenses involving drugs requires reference in this case to Application Note 1 to Guideline Section 2D1.4, because Count 2 "involved negotiation to traffic in a controlled substance" (quoting Note 12). The short answer is that Count 2 was a possession and distribution count and not a negotiation count. Moreover, Application Note 1 only excludes drug amounts from guideline calculations if "the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount" of the illegal substance. Judge Evans made no such finding.

## CONCLUSION

For the reasons discussed above, the decision of the district court is affirmed.