**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Dennis D. HOFFMAN, Defendant–**
**Appellant.**

**No. 91–1371.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 16, 1991.

Decided Feb. 14, 1992.

Francis D. Schmitz, Asst. U.S. Atty., Milwaukee, Wis. (argued), for plaintiff-appellee.

John Anthony Ward, Kenosha, Wis. (argued), for defendant-appellant.

Before COFFEY, MANION and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Dennis D. Hoffman was convicted on one count of conspiracy to possess and distribute methamphetamine in violation of 18 U.S.C. § 846. Hoffman was subsequently sentenced to a term of 76 months imprisonment, four years of supervised release and a fine of $2,500.00. He now appeals his conviction and sentence. For the following reasons, we affirm.

## I.

Through the use of a cooperating informant named Brian Dorn, undercover narcotics agents were able to make four controlled purchases of methamphetamine from Donna Ganas between April 16 and May 16, 1990. The first two transactions were conducted alone by Ms. Ganas at her residence in De Pere, Wisconsin. During their final two transactions, however, Ms. Ganas was accompanied by her former roommate, Kellie Gasser. Mr. Dorn later learned from another informant that Ms. Gasser was a methamphetamine supplier whom he could regularly contact to make additional drug purchases.

Under the direction of narcotics agents, Mr. Dorn arranged to purchase one-half ounce of methamphetamine from Ms. Gasser on May 17, 1990. Ms. Gasser informed him that she would not be able to personally participate in the transaction, but that a woman by the name of "Diane" would meet him in front of Ganas' residence to deliver the methamphetamine. That same evening at approximately 10:00 P.M., Mr. Dorn and an undercover agent met "Diane," who sold them 14.7 grams methamphetamine for $950.00. Police intelligence would subsequently reveal that "Diane" was Ms. Diane Knorr, another of Ms. Gasser's former roommates.

On July 3, 1990, Ms. Gasser was arrested and taken into custody. After being advised of her constitutional rights, Ms. Gasser agreed to make a voluntary statement. In her statement, Ms. Gasser admitted that she had been romantically involved with a truck driver named Dennis Hoffman, and that during this relationship she received from him a total of five ounces of methamphetamine. According to Ms. Gasser, she purchased methamphetamine from Mr. Hoffman approximately twenty times in amounts ranging from one gram to one-half ounce, and that Mr. Hoffman normally charged her $200.00 per one-eighth ounce. She also stated that she frequently sold methamphetamine at the Sound Trak Bar in Green Bay, Wisconsin—all of which had been supplied by Mr. Hoffman. Ms. Gasser then turned over to the police a glass vial which was later determined to contain traces of methamphetamine.

Ms. Ganas was likewise arrested and taken into custody on July 3, 1990. In return for more lenient treatment, she agreed to cooperate with the government in building a case against Mr. Hoffman.

On September 11, 1990, a grand jury returned a superseding indictment against Mr. Hoffman and Ms. Gasser. The indictment alleged that they conspired to possess and intentionally distribute methamphetamine between July 1, 1989 and July 3, 1990, in violation of 18 U.S.C. § 846. Ms. Gasser was also charged with two counts of distributing methamphetamine. Mr. Hoffman surrendered himself to the police on September 24, 1990, and his case proceeded to trial shortly thereafter on November 26, 1990.

At trial, Ms. Ganas testified that she had been friends with Ms. Gasser for two and

one-half years, and that they had lived together in De Pere for approximately five months between October 1989 and March 1990. She stated that, during that period Ms. Gasser and Mr. Hoffman became romantically involved, and that the three of them would occasionally experiment with methamphetamine. According to Ms. Ganas, she observed Mr. Hoffman showing Ms. Gasser how to weigh and package methamphetamine at her residence. She also stated that all of the methamphetamine she sold to Brian Dorn was supplied by Mr. Hoffman through Ms. Gasser, and that she had continued to receive methamphetamine from Mr. Hoffman—for both business use and personal consumption—even after Ms. Gasser moved out of their residence to live with Ms. Knorr in Isaar, Wisconsin.

Ms. Knorr testified that she believed Mr. Hoffman was Ms. Gasser's source for methamphetamine, but conceded that she never personally saw drugs pass between them. However, she stated that while she lived with Ms. Gasser, she had observed that Ms. Gasser's methamphetamine supply was always replenished immediately after a visit by Mr. Hoffman. She also admitted that although she used cocaine, marijuana and methamphetamine, she did not consider herself addicted to any drug.

Two other witnesses—Sheila Patterson and Randy Wellens—testified that they regularly obtained methamphetamine from both Mr. Hoffman and Ms. Gasser, and that each purchased the drugs solely for personal use.

Ms. Gasser was also called as a witness for the government. She admitted her relationship with Mr. Hoffman, and stated that Mr. Hoffman gave her methamphetamine for her personal use free of charge. However, she denied ever selling methamphetamine, but rather admitted to "sharing" it with Sheila Patterson, Diane Knorr, Donna Ganas, and Randy Wellens. She also testified that her signed statement was made involuntarily, based simply upon the "suggestions" of the officers questioning her.

The defense called no witnesses in response to the government's evidence, and rested its case on November 28, 1990. However, at an instruction conference held on November 29, 1990, the defense counsel objected to the court's refusal to include two of Mr. Hoffman's proposed instructions concerning bias and addict-informants. In response, the court ruled that it did not "feel that the bias or prejudice [exhibited by Ms. Ganas against Mr. Hoffman] was so hostile in this case as to suggest that such an instruction should be given." The court similarly concluded that it was not required to give the proposed addict instruction.

The jury returned a guilty verdict on November 30, 1990, and Mr. Hoffman was remanded to the custody of the United States Marshal based on the court's finding that he was a threat to the community. At sentencing, the court determined that Mr. Hoffman was responsible for approximately five ounces of methamphetamine—a finding based largely on the statements made by Ms. Gasser during her police questioning on July 3, 1990. In reaching this conclusion, the court expressly rejected Ms. Gasser's trial testimony that her earlier statements were made involuntarily. The court also noted that the testimony of the other government witnesses fully corroborated Ms. Gasser's statements to the police. The court then sentenced Mr. Hoffman to 76 months imprisonment, four years of supervised release and a fine of $2,500.00. This appeal followed.

## II.

### Jury Instructions

Mr. Hoffman first contends that the district court committed reversible error by failing to give to the jury his proposed instructions concerning addict-informants and bias. When assessing such challenges, the instructions as a whole must be considered. *United States v. Durades*, 929 F.2d 1160, 1167 (7th Cir.1991); *United States v. Sims*, 895 F.2d 326, 329 (7th Cir. 1990); *United States v. Grier*, 866 F.2d 908, 932 (7th Cir.1989). "As long as the instructions treat the issue fairly and ade-

quately, they will not be interfered with on appeal." *Sims*, 895 F.2d at 329 (*quoting United States v. Machi*, 811 F.2d 991, 1005 (7th Cir.1987)). With these fundamental principles in mind, we turn to Mr. Hoffman's proposed instructions.

■ Mr. Hoffman's proposed jury instruction concerning addict-informants read as follows:

> If an informer is also a narcotic addict, there are additional reasons why his testimony should be considered with great weight. An addict has a constant need for a supply of drugs and for money to support his habit, and also may have abnormal fear of imprisonment in which his supply of drugs may be cut off. These are special circumstances which you may consider in weighing the testimony of this kind. You are, [sic] of course, may give the testimony such weight as you think proper after considering all relevant circumstances. See *Devit & Blackmar*, 3rd Edition, Sec. 1703 [sic].

Mr. Hoffman now contends that the district court erred by failing to evaluate this proposed instruction in light of our decision in *United States v. Manganellis*, 864 F.2d 528, 543 (7th Cir.1988). There, we set forth the following four-factor test for determining under what circumstances an addict-informant instruction should be provided:

> (1) was the informant an addict at the time of the trial, not when the alleged transactions occurred; (2) was her addiction subject to cross-examination; (3) was the jury instructed that the addict's testimony should be particularly scrutinized; and (4) was the addict's testimony corroborated.

*Manganellis*, 864 F.2d at 543, *citing United States v. Shigemura*, 682 F.2d 699, 702–03 (8th Cir.1983). According to Mr. Hoffman, had the district court applied the *Manganellis* analysis, it would have concluded that an addict-informant instruction was appropriate, if not required.

Our own application of the *Manganellis* factors leads us to a different conclusion.

To begin with, Mr. Hoffman has not established that any of the government witnesses were addicts at the time of trial, thereby failing the first prong of the *Manganellis* analysis. Neither party disputes the fact that Mr. Dorn, Ms. Ganas, Mr. Wellens, Ms. Patterson and Ms. Knorr each admitted that they had at one point used cocaine and methamphetamine on a regular basis. However, each of these witnesses also testified that they had ceased using drugs well in advance of the November 26, 1991 trial—a fact which Mr. Hoffman conveniently sidesteps.[1] In addition, these witnesses were thoroughly cross-examined on the issue of drug addiction, as required under the second *Manganellis* prong. Having heard their responses firsthand, the district court evidently determined that they were credible witnesses who were no longer afflicted with an immediate need for drugs. We see no reason to disturb that judgment.

Mr. Hoffman concedes, as he must, that the district court's instruction with respect to the credibility of these government witnesses clearly meets the third requirement of *Manganellis*—that an addict's testimony be particularly scrutinized:

> Several witnesses, including Donna Ganas, Randy Wellens, Diane Knorr and Sheila Patterson admit having been involved in drug related activities. You have also heard the testimony that Randy Wellens and Donna Ganas and Brian Dorn received or may receive benefits from the government in connection with this case. You may give the testimony of all of these witnesses such weight as you feel it deserves, keeping in mind that it must be considered with caution and great care.

And as for the fourth factor—whether the addict's testimony was corroborated—the record fully supports the government's contention that the testimony of all of the witnesses who formerly used drugs was, for the most part, consistent with respect to the drug activities of Mr. Hoffman. Only Ms. Gasser's testimony raised con-

---

**1.** Although Mr. Hoffman claims that the evidence is unclear as to when these witnesses stopped using drugs, he never specifies what part of the evidence is ambiguous.

flicting accounts on Mr. Hoffman's activities—and the district court expressly rejected this testimony as unreliable. We therefore hold that the district court properly refused to give Mr. Hoffman's proposed addict-instruction.

We next examine Mr. Hoffman's proposed instruction on bias and prejudice, which provided:

> You may also consider any demonstrated biased, [sic] prejudiced [sic] or hostility of a witness towards the defendant in determining the weight to be accorded his testimony. Devitt & Blackmar (3rd Ed. § 1707).

Mr. Hoffman now claims that his proposed bias instruction was necessary because there was "clear evidence as to the hostility existing between Donna Ganas and Dennis Hoffman."

A careful review of the record lends no support to Mr. Hoffman's assertion. Throughout her testimony, Ms. Ganas made no statements suggesting that she felt any hostility or bitterness towards the defendant. In fact, the only evidence Mr. Hoffman provides to support this contention is a statement by a narcotics agent indicating his belief that there was "friction" between Ms. Ganas and Mr. Hoffman. However, the record also reveals that such "friction"—if any—was harbored by Mr. Hoffman alone, based on his suspicions that Ms. Ganas authored a letter to his wife which disclosed his extramarital relationship with Ms. Gasser.

The district court's own instructions on witness credibility were more than sufficient to address any perceived bias by Ms. Ganas. The court instructed the jury that when

> considering the testimony of any witness, you should take into account his or her intelligence, ability and opportunity to observe, memory, manner while testifying, any interest, bias or prejudice that he or she may have, and the reasonableness of the testimony considered in the light of all evidence.

In our view, this instruction fairly treats the issues of bias and prejudice. We therefore hold that the district court properly refused to specifically instruct the jury with regards to Ms. Ganas' bias against Mr. Hoffman.

*Sentencing*

Mr. Hoffman raises two challenges to his sentence. First, he contends that the district court erroneously determined that he distributed five ounces of methamphetamine. Second, he claims that the district court sentenced him unfairly because his co-conspirator, Kellie Gasser, was held responsible for only 31.21 grams of methamphetamine, rather than five ounces. We find both arguments unpersuasive.

We review challenges to a district court sentencing decision under a deferential standard. *United States v. Boyer*, 931 F.2d 1201, 1203–04 (7th Cir.1991). To the extent that the sentencing decision turns on findings of fact and credibility, the district court's conclusions will not be disturbed unless they are clearly erroneous. *Id.* at 1204; *United States v. Vopravil*, 891 F.2d 155, 157 (7th Cir.1989); *United States v. Herrera*, 878 F.2d 997, 1000 (7th Cir.1989); *see also* 18 U.S.C. § 3742. A finding of fact is clearly erroneous only if, after reviewing the evidence, we are left "with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). "Ascertaining the quantity of drugs involved in an offense for the purpose of sentencing is a factual determination subject to the clearly erroneous standard." *United States v. Buggs*, 904 F.2d 1070, 1078 (7th Cir.1990); *see also United States v. Ocampo*, 890 F.2d 1363, 1372 (7th Cir.1989).

The record fully supports the district court's conclusion that Mr. Hoffman was responsible for five ounces of methamphetamine. In her statement to the police, Ms. Gasser stated that she received methamphetamine from Mr. Hoffman on approximately twenty occasions in amounts varying from one gram to one-half ounce. The court found these statements to be reliable, notwithstanding Ms. Gasser's attempt to later repudiate them at trial:

> [I]t was obviously an attempt ... where a person having once made a statement

then being faced with a charge and the serious penalties that are associated with it, attempts to extricate themselves from that mire that they volunteered in the first instance. It's not uncommon, and certainly I can understand why she did that.

The court also noted that Ms. Gasser's statements were supported by other corroborating evidence, including the testimony of Ms. Ganas, Ms. Knorr, Mr. Wellens and Mr. Dorn—most of whom had regularly purchased varying quantities of methamphetamine from Mr. Hoffman. In short, we cannot say that the district court was clearly erroneous in calculating that Mr. Hoffman was accountable for five ounces of methamphetamine.

██ The fact that Mr. Hoffman received a more severe sentence than his co-defendant, Ms. Gasser, does not demonstrate any abuse of discretion on the part of the district court. *United States v. Marren,* 890 F.2d 924, 937 (7th Cir.1989) (mere showing of disparity in sentences among co-defendants does not, without more, establish an abuse of discretion). Contrary to Mr. Hoffman's assertions, he and Ms. Gasser were hardly "like" defendants. He was the individual responsible for first procuring the methamphetamine which Ms. Gasser distributed at the Sound Trak Bar. He recruited Ms. Gasser's assistance in weighing, packaging and selling methamphetamine. He also attempted to recruit additional dealers for methamphetamine, including Ms. Ganas and Mr. Wellens. Given these circumstances, the disparity between the sentences of Mr. Hoffman and Ms. Gasser does not raise any inference of impropriety. *See United States v. Briscoe,* 896 F.2d 1476, 1519 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 173, 112 L.Ed.2d 137 (1990).

### III.

For the foregoing reasons, we AFFIRM the defendant's conviction and sentence.