**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ray POLLARD, Defendant–Appellant.**

**No. 91–3163.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 27, 1992.

Decided June 2, 1992.

284

K. Tate Chambers, Asst. U.S. Atty., Peoria, Ill. (argued), for plaintiff-appellee.

Ronald Hamm, Hamm & Hanna, Peoria, Ill. (argued), Stephen W. Bush, Washington, Ill., for defendant-appellant.

Before COFFEY and MANION, Circuit Judges, and SHABAZ, District Judge.*

SHABAZ, District Judge.

Ray Pollard pled guilty to one count of a superseding indictment charging him with manufacturing marijuana in violation of 21 U.S.C. § 841(a)(1). He was sentenced to twenty-seven months imprisonment followed by three years of supervised release and fined $6,000 pursuant to the United States Sentencing Commission Guidelines ("Guidelines"). He appeals from this sentence, arguing that the district court erred in considering as relevant conduct marijuana grown by a co-defendant. We affirm.

## BACKGROUND

### Facts

The Drug Enforcement Administration's ("DEA") national project known as "Operation Green Merchant" investigated businesses selling indoor marijuana cultivation equipment. In May 1989 the DEA commenced an undercover investigation of High Tech Indoor Gardening ("High Tech") located in Washington, Illinois. The business advertised for the sale of indoor cultivation equipment in *High Times* magazine. A background check showed that the business was owned in part by defendant Ray Pollard.

DEA special agents Scott Ando and Scott Courtney posed as interested buyers. Ando telephoned defendant at High Tech and asked for an indoor growing equipment catalog. After receiving the catalog, Ando telephoned High Tech and spoke with

---

* The Honorable John C. Shabaz, of the Western District of Wisconsin, is sitting by designation.

Pollard and co-defendant Norman Kawa. Ando scheduled an appointment to visit the business and discuss the construction of an indoor growing operation.

Ando and Courtney visited High Tech on June 27, 1989 and spoke with co-defendant Kawa. Kawa informed them about the equipment they would require in order to begin an indoor marijuana growing system. Kawa also discussed the marijuana growing processes and the use of seeds versus clone plants. Ando placed an order for equipment and asked Kawa to discuss the order with defendant Pollard.

The next day Ando and Courtney returned to the business and gave Kawa a deposit for the equipment. Kawa told them that upon discussing their order with Pollard, Pollard concluded that they would need more equipment for their marijuana growing operation. Kawa represented that he was part-owner of the business with Pollard and that 98 percent of their customers cultivated marijuana. Kawa discussed marijuana cultivation with the agents again and told them of other persons in Peoria who cultivated marijuana.

In mid-July 1989 Ando and Courtney met with Kawa at High Tech to obtain the equipment they had ordered. Ando asked Kawa where they could obtain marijuana clone plants. Kawa told the agents that he knew of someone from whom they could buy clones. Kawa had previously transacted business with this individual, Ronald Lambert. Kawa introduced the agents to Lambert. Later Kawa, Ando and Courtney went to Lambert's residence and Ando and Courtney purchased four marijuana clone plants from Lambert. Ando, Courtney and Kawa then returned to High Tech, where Kawa retrieved a marijuana cigarette weighing .316 grams and gave it to them free of charge.

On July 20, 1989 Ando and Courtney met with Pollard to discuss the possibility of purchasing an interest in High Tech. Pollard indicated that he would accept $11,000 in exchange for an interest in the business. Pollard discussed the local marijuana growers and the yield they could expect from their growing operation. He also indicated

that he and Kawa each grew marijuana at their residences. Pollard gave the agents 1.87 grams of marijuana free of charge. The three of them met at High Tech the next day to discuss the records and practices of the business.

On September 7, 1989 Ando, Courtney and Susan Tomczyk, an IRS agent who posed as an accountant, met with Pollard and Kawa at High Tech to review the business records. The possibility of concealing purported profits from cocaine trafficking by depositing money into High Tech and then writing fake paychecks to Courtney and Ando was discussed. Co-defendants Kawa and Pollard agreed to this procedure.

On October 10, 1989 agents with the Division of Criminal Investigation, Illinois State Police ("DCI"), recovered material used in the growing of marijuana from several garbage bags located at Kawa's residence. Similarly, on October 11, 1989 DCI agents recovered High Tech business papers and material used in indoor marijuana cultivation from garbage bags at Pollard's residence.

Ando and Courtney met with Pollard on October 18, 1989 to inform him they had decided to buy an interest in High Tech. Ando also paid the outstanding amount due on the four marijuana clone plants purchased from Lambert.

On October 26, 1989 Ando, Courtney and Tomczyk met with co-defendants Pollard and Kawa to purchase 30 percent of High Tech for $11,000. Ando gave Pollard $11,000 which he represented was derived from cocaine sales and might have residue on it. The purchase agreement was signed and Kawa signed as a witness. Co-defendants Kawa and Pollard were then arrested.

High Tech and the residences of Pollard and Kawa were searched on October 26, 1989. Among the items recovered were the following: a marijuana cigarette weighing .328 grams seized at High Tech; and marijuana plants, loose marijuana and materials used in the indoor cultivation of marijuana seized at each of Kawa and Pollard's residences. Kawa's wife, Barbara Kawa, was home when the agents searched Kawa's residence and she told agents that

her husband grew and sold marijuana. Barbara Kawa also told agents that her husband had initially grown marijuana for their personal use, but with the expansion of the operation, he began selling marijuana.

Co-defendant Lambert was also arrested on October 26, 1989. Marijuana plants, loose marijuana and materials for the indoor cultivation of marijuana were among the items seized at his residence.

## District Court Proceedings

On November 15, 1989 Pollard, Kawa and Lambert were indicted by a federal grand jury. Count 1 of the ten count indictment charged Pollard, Kawa and Lambert with conspiracy to manufacture and distribute marijuana from May to October 1989. Kawa and Lambert were also each charged with one count of distributing marijuana and one count of manufacturing marijuana. In addition to the conspiracy charge Pollard was charged with the following: three counts of using a telephone to facilitate the conspiracy, one count of marijuana distribution and one count of marijuana manufacturing. On December 21, 1989 a superseding indictment was returned charging the defendants with the same counts as in the original indictment and a further count charging Pollard with conducting a financial transaction with proceeds represented to be from cocaine trafficking with the intent to promote a conspiracy to manufacture marijuana.

On May 25, 1990 Pollard pled guilty to Count 8 of the superseding indictment, which stated:

On or about October 26, 1989, in Peoria County, within the Central District of Illinois,

### RAY POLLARD,

defendant herein, did knowingly manufacture and cause to be manufactured marijuana, a Schedule I controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1).

In his plea agreement he also acknowledged that he had manufactured marijuana by growing it in his residence. As a result of his plea of guilty the Government agreed to dismiss the remaining counts against him.

A sentencing hearing was held on November 8, 1990. The district judge granted a continuance until November 28, 1990. This was later rescheduled.

At the sentencing hearing on March 15, 1991 the district judge took evidence and heard arguments concerning Pollard's relevant conduct. The marijuana plants seized at the residence of co-defendant Kawa had not been factored into Pollard's relevant conduct by the presentence report and were not discussed. Primarily at issue was whether the $11,000 of purported cocaine proceeds would be included in Pollard's relevant conduct. The district judge ruled it would not be included and arrived at an offense level of eight with a guideline range of two to eight months imprisonment. The judge then rejected the guilty plea finding that such a sentence would deprecate the seriousness of the offense.

Pollard filed a motion asking the district court to reconsider its decision to reject the plea agreement. At a hearing on April 24, 1991 the district judge stated that he had reconsidered and was willing to accept the plea agreement with the understanding that the $11,000 of purported cocaine proceeds could constitute other criminal conduct warranting an upward departure and that the marijuana plants grown by co-defendants Kawa and Lambert could be considered as relevant conduct. Pollard then elected to reaffirm his plea and a sentencing hearing was scheduled.

The presentence report was revised on August 15, 1991. It included Kawa's marijuana plants (29,600 grams) as relevant conduct. Pollard objected.

The final sentencing hearing was held on September 5, 1991. The district judge found that Kawa's marijuana was relevant conduct and would be considered in ascertaining Pollard's base offense level. Upon all the findings the judge determined that Pollard's total offense level was 18 and

that his Criminal History Category was I.[1] The sentencing guideline range was 27 to 33 months. Pollard was sentenced to twenty-seven months imprisonment followed by three years of supervised release during which time special conditions applied. He was also fined $6,000 and ordered to pay a $50 special assessment.

Pollard appeals from this sentence. The only issue before us is whether for purposes of sentencing the marijuana plants grown by co-defendant Kawa were properly included as relevant conduct concerning Pollard's conviction of manufacturing marijuana.

## DISCUSSION

■ A sentence imposed under the Guidelines will be upheld if "the district court correctly applied the Guidelines to findings of fact that were not clearly erroneous." *United States v. Duarte,* 950 F.2d 1255, 1262 (7th Cir.1991) (citing *United States v. Vopravil,* 891 F.2d 155, 157 (7th Cir.1989)).

■ The base offense level under the Guidelines for the unlawful manufacture of marijuana depends on the quantity of marijuana involved. *See* U.S.S.G. § 2D1.1(a)(3). For offenses which require a grouping of multiple counts under Guideline § 3D1.2(d),[2] the court shall consider "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of convic-tion." U.S.S.G. § 1B1.3(a)(2). In *United States v. White,* 888 F.2d 490 (7th Cir. 1989), we held that:

> [T]o determine the offense level for a drug offense, §§ 1B1.3(a)(2) and 3D1.2(d) of the Guidelines allow a court to aggregate the amounts of drugs from any act that "were part of the same course of conduct or common scheme or plan as the offense of conviction" whether or not the defendant was charged or convicted of possessing or distributing these additional amounts.

*United States v. Franklin,* 902 F.2d 501, 504 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 274, 112 L.Ed.2d 229 (1990).[3] Conduct on dismissed counts which is part of the same course of conduct or common scheme or plan may also be considered in determining the base offense level. *Id.; United States v. Salva,* 902 F.2d 483, 488 (7th Cir.1990). In defining "same course of conduct or common scheme or plan" we stated:

> Sentence must be based on the sales that were part of one "common scheme or plan" (such as a single conspiracy) or a single "course of conduct" (the unilateral equivalent to the conspiracy). Offenses of the same kind, but *not* encompassed in the same course of conduct or plan are excluded.

*White,* 888 F.2d at 500.

■ Count 1 of the superseding indictment charged Pollard, Kawa and Lambert

---

1. The following amounts were added to determine Pollard's base amount:

| | | |
|---|---|---|
| a. | Marijuana cigarette delivered to agents | 1.870 gm. |
| b. | Nineteen plants seized at Pollard's residence | 1,900.000 gm. |
| c. | Loose marijuana seized at Pollard's residence | 210.800 gm. |
| d. | 2 bags of marijuana seized at Pollard's residence | 7.410 gm. |
| e. | Marijuana cigarette seized at High Tech | .328 gm. |
| f. | Kawa's marijuana plants | 29,600.000 gm. |
| | TOTAL: | 31,720.408 gm. |

2. Section 3D1.2 is entitled "Groups of Closely–Related Counts" and subsection (d) requires grouping of counts "[w]hen the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm...."

However, a defendant need not actually have been convicted of more than one count for Guidelines § 1B1.3(a)(2) to apply. U.S.S.G. § 1B1.3 comment. (n. 2); *See United States v. White,* 888 F.2d 490, 497 (7th Cir.1989).

3. In *White* we specifically declined to follow the Ninth Circuit's decision in *United States v. Restrepo,* 883 F.2d 781 (9th Cir.1989), *withdrawn,* 896 F.2d 1228 (9th Cir.1990), which held that only conduct resulting in a criminal conviction may be considered in determining the offense level under the Multiple Counts section of the Guidelines. *See White,* 888 F.2d at 490. Therefore Pollard's reliance on *Restrepo* is misplaced.

with one count of conspiracy to manufacture and distribute marijuana. The conspiracy charge against Pollard was dismissed when he pled guilty to manufacturing marijuana, Count 8 of the superseding indictment. However, conduct relating to Pollard's conspiracy charge, which is part of the same course of conduct or common scheme or plan as his conviction of manufacturing marijuana under the Guideline § 1B1.3(a)(2), may be considered when determining the base offense level. *See Franklin*, 902 F.2d at 504; *Salva*, 902 F.2d at 488.

■ We have stated that "a district court should explicitly state and support, either at the sentencing hearing or (preferably) in a written statement of reasons, its finding that the unconvicted activities bore the necessary relation to the convicted offense." *Duarte*, 950 F.2d at 1263. Further, a district court must find by a preponderance of the evidence that unconvicted or uncharged acts were part of the same course of conduct or common scheme or plan as the offense of conviction. *Id.; See White*, 888 F.2d at 499. At the final sentencing hearing on September 5, 1991, the district judge stated his reasons for attributing the marijuana plants grown by Kawa to Pollard for sentencing purposes.

We agree with the district court that the evidence supports a finding that the marijuana grown by Kawa and seized at his residence was part of the same course of conduct or common scheme or plan as Pollard's conviction for the manufacture of marijuana. Pollard owned High Tech and Kawa was his employee. Together Kawa and Pollard operated the business which sold equipment for the manufacture of marijuana. Both grew or manufactured marijuana at their residences. Pollard knew that Kawa grew marijuana at his residence. Pollard relied on Kawa's expertise in growing marijuana to operate his business. It was primarily Kawa who advised Ando and Courtney of the process for indoor marijuana cultivation. Kawa helped Ando and Courtney obtain marijuana clones for their marijuana growing operation.

The evidence supports the inference that the plants grown by Pollard and Kawa were used, or to be used indirectly, in their business. During their business transactions with Ando and Courtney, Pollard and Kawa each gave them a marijuana cigarette free of charge. When agents searched High Tech on October 26, 1989, they found a marijuana cigarette. Accordingly the inference can be drawn that marijuana, presumably manufactured by Pollard and Kawa, did find its way into their business dealings. Further, Pollard promoted the manufacture of marijuana as his business. During negotiations for an interest in High Tech Pollard told Ando and Courtney that he and Kawa each cultivated marijuana. The evidence supports a finding that the plants which Kawa grew at his residence were part of the same course of conduct or common scheme or plan as Pollard's conviction of marijuana manufacturing, because the joint manufacture of marijuana was the business of both defendants.

The district court did not err in finding that Kawa's marijuana plants were a part of the same course of conduct or common scheme or plan as Pollard's conviction for the manufacture of marijuana.

CONCLUSION

For the reasons discussed above, the decision of the district court is not clearly erroneous and accordingly we affirm.