986 F.2d 1425
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Oscar CORRAL, Defendant-Appellant.
 No. 91-3209.
 United States Court of Appeals, Seventh Circuit.
 Argued Feb. 3, 1993.
Decided Feb. 23, 1993.
 
 Appeal from the United States District Court for the Central District of Illinois, Springfield Division, No. 91-30008, Richard Mills, Judge.
 
 ORDER
 
 1
 Defendant, Oscar Corral, pleaded guilty to distributing one kilogram of cocaine. 21 U.S.C. § 841(a)(1). On appeal, Corral contends that the district court erred in calculating the quantity of drugs attributable to him under the United States Sentencing Guidelines sections 1B1.3(a)(2) and 3D1.2(d).
 
 I. Analysis
 
 2
 Corral maintains that the sentence imposed was erroneous because the district court, in calculating his base offense level, included the following: (1) three kilograms of cocaine referred to by defendant on January 31, 1991; (2) one kilogram of cocaine defendant admitted distributing two years prior to his arrest; and (3) thirty pounds of marijuana defendant asked the government informant to deliver nearly a year before defendant's arrest.
 
 
 3
 The determination of the quantity of drugs used to calculate the sentence is a factual determination to be made by the sentencing judge, and this court will not disturb that determination absent clear error. 18 U.S.C. § 3742(a); United States v. Hoffman, 957 F.2d 296, 300 (7th Cir.), cert. denied, 112 S.Ct. 2315 (1992); United States v. Buggs, 904 F.2d 1070, 1078 (7th Cir.1990). In computing the base offense level, the Guidelines require the district court to aggregate the amount of drugs from any acts that were found, by the preponderance of the evidence, to be "part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 2D1.1, comment n. 12 [incorporating § 1B1.3(a)(2) ]. The defendant need not be charged with or convicted of an offense involving the additional amounts in order to be sentenced on those amounts. United States v. Pollard, 965 F.2d 283, 287-88 (7th Cir.1992); United States v. Nunez, 958 F.2d 196, 198 (7th Cir.), cert. denied, 113 S.Ct. 168 (1992); United States v. Duarte, 950 F.2d 1255, 1263 (7th Cir.1991), cert. denied, 113 S.Ct. 174 (1992); United States v. Vopravil, 891 F.2d 155 (7th Cir.1989).
 
 
 4
 In determining whether acts were part of the same course of conduct, the district court must find by the preponderance of the evidence that similarities in location, timing, and participants are sufficient to establish a nexus linking the offenses. Pollard, 965 F.2d at 288; United States v. Caicedo, 937 F.2d 1227, 1236 (7th Cir.1991); United States v. White, 888 F.2d 490, 491-500 (7th Cir.1989). In defining "same course of conduct or common scheme or plan, "this court has recognized the need to scrupulously interpret the language of § 1B1.3(a)(2), and has stated:
 
 
 5
 [A] sentence must be based on the sales that were part of one "common scheme or plan" (such as a single conspiracy) or a single "course of conduct" (the unilateral equivalent to the conspiracy). Offenses of the same kind, but not encompassed in the same course of conduct or plan are excluded.
 
 
 6
 White, 888 F.2d at 500.
 
 
 7
 In this case, the district court applied the law of a Second Circuit decision, United States v. Perdomo, 927 F.2d 111, 115 (2d Cir.1991), rather than the test we stated in White. The district court stated that "the same course of conduct looks to whether the Defendant repeats the same type of criminal activity over time. It does not require that acts be connected together by common participants or by an over-all scheme." (Tran.Vol. I at 8).
 
 A. The Three Kilograms of Cocaine
 
 8
 Corral first argues that his statement to government informant, Merriman, regarding the potential purchase of three kilograms of cocaine was not an "act" within the purview of "relevant conduct" as defined by the Sentencing Guidelines. U.S.S.G. § 1B1.3(a)(2). Statements made in negotiating a future drug transaction may constitute an "act" for the purposes of relevant conduct if the negotiations were "part of the same course of conduct or common scheme or plan as the offense of conviction."
 
 
 9
 Where the defendant was convicted of possession or distribution of a controlled substance, whether additional amounts which were planned but never transacted may be aggregated requires a two part analysis. The first issue is whether the defendant's conduct in negotiating a future drug deal was "part of the same course of conduct or common scheme or plan as the offense of conviction." The second is whether the quantity of drugs involved in the future deal was ascertainable. Vopravil, 891 F.2d at 158.
 
 
 10
 Similar to this case, Vopravil involved a conviction for possession and distribution of cocaine. Vopravil initially agreed to supply an informant with a kilogram of cocaine, but transacted two one-ounce deals prior to scheduling the one kilogram deal. 891 F.2d at 156. On the date arranged for the one kilogram transaction, Vopravil fled before the exchange was made. Id. Nonetheless, the court affirmed the aggregation of the one kilogram in calculating Vopravil's base offense level. With respect to the first issue, the court concluded that the planned one kilogram transaction was "part of the same course of conduct" as the one-ounce sale on which Vopravil was convicted. Id. ("[t]hree transactions occurring just over a one-month period were part of one enterprise"). Similarly, in the instant case, the negotiations for the future three kilogram deal occurred just prior to and at the time of the one kilogram sale, linking these transactions as part of one enterprise. Therefore, Corral's "act" of negotiating the sale of an additional three kilograms of cocaine constitutes relevant conduct.
 
 
 11
 In addressing the second issue, the Vopravil court outlined the factual findings supporting the conclusion that the planned one kilogram deal was "ascertainable."[1] 891 F.2d at 158. The court also noted that drug amounts are excluded from the guideline calculations only if the district court determines that the defendant did not intend to or was not reasonably capable of producing such amount. Id. Because no such finding was made, the aggregation was upheld.
 
 
 12
 After reviewing the district court's factual findings to determine whether the three kilogram amount was ascertainable we conclude that they were not clearly erroneous. The discussions in this case are sufficient to support a finding that a future sale of at least three kilograms was ascertainable. At least two discussions were held regarding the sale of an additional three kilograms. In a recorded phone conversation, defendant indicated to Merriman the possibility of purchasing two or three kilograms with the profits from earlier sales and dividing them between deliveries to Leo in Omaha and to Springfield. During the sale of the one kilogram to DEA Special Agent Latham in Springfield, Latham inquired about purchasing three kilograms of cocaine every two weeks. In direct response, Corral expressed his willingness to provide any quantity Latham could afford at approximately $23,000 per kilogram. A future sale that hinges only on payment is, for all practical purposes, negotiated.
 
 
 13
 Further, we reject defendant's characterization of his statements as mere puffery or braggadocio. United States v. Ruiz, 932 F.2d 1174, 1184 (7th Cir.), cert. denied, 112 S.Ct. 151 (1991).[2] The evidence of negotiations noted above reveals that Corral was sentenced based on his intent and ability to carry out an additional sale of three kilograms, not based on off-hand comments concerning larger quantities. See United States v. Cea, 963 F.2d 1027, 1031 (7th Cir.), cert. denied, 113 S.Ct. 281 (1992).
 
 
 14
 Furthermore, the fact that Corral had not contacted his supplier before leaving for Springfield does not undermine a finding that the sale of three kilograms was under negotiation. Defendant's stated willingness to provide Latham with any additional cocaine he could afford suggests that Corral was confident that the cocaine would be available.
 
 
 15
 The district court accepted this sequence of events as sufficient to support a factual finding that but for the arrest, defendant was willing and capable of producing an additional three kilograms of cocaine. (Sentencing Tr. at 7). Although the findings are not abundant, they are adequate under the clearly erroneous standard. Accordingly, we uphold inclusion of the three kilograms of cocaine in the defendant's base offense calculation.
 
 B. The One Kilogram of Cocaine
 
 16
 After Corral was arrested and read his Miranda rights, he admitted selling one kilogram of cocaine in early 1989 to an individual named Leo from Omaha, Nebraska. Corral argues that the district court erred in including this one kilogram in his base offense because it was not part of the same course of conduct or common scheme or plan as the offense of conviction. Again, in this determination factual findings made by the district court will not be overturned unless clearly erroneous. Vopravil, 891 F.2d at 157.
 
 
 17
 Factually, the court relied on Merriman's knowledge of a past sale to Leo and on Corral's statements to Merriman on January 31, 1991, as sufficient evidence that Corral was still selling cocaine to Leo. This, the district court believed to be sufficient to warrant inclusion of the 1989 sale as part of the same course of conduct as the offense of conviction. We disagree.
 
 
 18
 The cocaine sale to Agent Latham facilitated by Merriman took place in Springfield, Illinois, approximately two years after the sale to Leo which took place in Phoenix, Arizona. Merriman was not involved as a co-conspirator in the 1989 sale to Leo as he was in the Springfield transaction. In fact, Merriman did not become involved in drug transactions with Corral until March of 1990. In addition, the methods of distribution differed; Corral flew to Springfield to consummate the deal with Merriman and Latham, but Leo drove from Omaha to Phoenix to buy the cocaine. Finally, there is no indication that the source of the cocaine was the same. Factually, there is little evidence in the record to suggest a temporal, geographical, participatory, or any other relationship between the offense of conviction and the 1989 sale to Leo. In essence, there is nothing to relate the two offenses other than the nature of the drug. See White, 888 F.2d at 500; Duarte, 950 F.2d at 1264-66.
 
 
 19
 After review of the record, we cannot accept the factual finding that the 1989 sale of cocaine to Leo from Omaha, Nebraska was part of the same course of conduct or common scheme or plan as the cocaine sale to Agent Latham in Springfield, Illinois. Although it was an offense of the same kind, it was not encompassed in the same course of conduct or plan and therefore, the district court erred in including it in the base offense level.
 
 C. The Thirty Pounds of Marijuana
 
 20
 Although an improper standard was applied below, with respect to aggregating the thirty pounds of marijuana, this error was harmless. Under the White standard, there is sufficient evidence to conclude that the thirty pounds of marijuana delivered by Merriman to Omaha, Nebraska in March 1990, was part of a same course of conduct or common scheme or plan as the offense of conviction.
 
 
 21
 Corral's objection to the Presentence Report's inclusion of the thirty pounds of marijuana at the sentencing hearing triggered the protections of Federal Rule of Criminal Procedure 32(c)(3)(D). Although no specific factual findings were made regarding the allegations of the marijuana offense, adoption of the probation officer's position is sufficient to satisfy the purposes of Rule 32. See United States v. Montoya, 891 F.2d 1273, 1280 (7th Cir.1989) (sentencing judge's agreement with probation officer's opinion on disputed issue was sufficient factual finding under Rule 32); United States v. Ramirez, 963 F.2d 693, 706-07 (5th Cir.), cert. denied, 113 S.Ct. 388 (1992); United States v. Rigby, 896 F.2d 392, 394 (9th Cir.1990). For clarity, however, we will briefly outline a few of the factual findings supporting the determination that the marijuana was part of the same course of conduct or common scheme or plan as the offense of conviction.
 
 
 22
 Merriman participated as a courier for Corral in the distribution of marijuana, and continued to participate by arranging the buy which was the subject of the offense of conviction. The thirty pounds of marijuana was delivered by Merriman to Omaha, Nebraska. The offense of conviction occurred in Springfield, Illinois. Although the geographical locations differed, there is evidence that Merriman had previously delivered marijuana to Springfield, Illinois; to Jackson Michigan; and to Omaha, Nebraska at Corral's request.[3] (PSI, para. 12, 14, 15 & 22). The fact that Merriman was instrumental in the delivery of both the thirty pounds of marijuana as well as the offense of conviction provides a nexus linking both offenses. Merriman began cooperating as a government informant after his arrest in January of 1991. Prior to that time, he had made several deliveries for Corral. Thus, the offense of conviction (February 1, 1991) and the delivery of the thirty pounds of marijuana (March, 1990) were temporally connected by previous deliveries made by Merriman. Finally, the customers necessarily differed because the offense of conviction involved the sale of cocaine to a DEA agent.
 
 
 23
 Upon review, these factual findings support a sufficient relationship between the thirty pound marijuana offense and the offense of conviction to warrant aggregation. Therefore, under White it was not clear error for the district court to include this quantity in calculating Corral's base offense level. Moreover, even if aggregation of the thirty pounds was erroneous, it must be considered harmless. See Buggs, 904 F.2d at 1070. After eliminating the one kilogram of cocaine from the calculation, the additional subtraction of the thirty pounds of marijuana would not further reduce Corral's base offense level.[4] See U.S.S.G. § 2D1.1 & comment n. 1. Therefore, any possible error committed in including the thirty pounds of marijuana was harmless.
 
 
 24
 However, because we find the district court erroneously included the disputed one kilogram of cocaine as part of the same course of conduct or common scheme or plan, we VACATE Corral's sentence and REMAND the case for resentencing after eliminating the previous one kilogram sale from the calculation.
 
 
 
 [1]
 The court rejected Vopravil's request to analyze whether he possessed the intent and ability to consummate the future transaction under section 2D1.4 of the Guidelines. The court found section 2D1.4 inapplicable because it addresses offenses involving negotiation to traffic in a controlled substance and Vopravil's conviction was based on a count for possession and distribution not a negotiation count. Id. at 159
 
 
 [2]
 Ruiz agreed to sell two kilograms of cocaine to an under cover agent, but brought only one to the transaction. When the buyer became upset over receiving only one of two kilograms of cocaine promised, Ruiz responded, "I'll get you the other kilo. And if you want, even ten more I can get." Ruiz, 932 F.2d at 1177
 
 
 [3]
 Merriman was arrested in Springfield Illinois in January of 1991, after delivering 200 pounds of marijuana at Corral's direction. (PSI, para. 15-17)
 
 
 [4]
 The total quantity of drugs originally attributed to Corral was 5,069 grams of cocaine and 330 pounds of marijuana. This total equates to 1,164 grams of heroin (1.16 kilograms), which results in a base offense level of 32. The elimination of one kilogram of cocaine reduces the total quantity to 964 grams of heroin (.964 kilograms), and results in a base offense level of 30. The subtraction of thirty pounds of marijuana (13.608 grams of heroin) only reduces the quantity to 950 grams (.950 kilograms). This additional reduction does not change the base offense level