968 F.2d 1219
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Frances RENTERIA and Allen L. Earle, Defendants-Appellants.
 Nos. 91-2481, 91-2726.
 United States Court of Appeals, Seventh Circuit.
 Submitted June 16, 1992*
Decided July 8, 1992.
 
 Before CUMMINGS, POSNER and MANION, Circuit Judges.
 
 ORDER
 
 1
 These consolidated appeals arise out of events surrounding the prosecution and sentencing of Frances Renteria and Allen Lee Earle. Both Renteria and Earle were involved in a conspiracy to distribute cocaine.
 
 I. FACTS
 A. Renteria
 
 2
 On several occasions during the summer of 1990, police surveillance revealed defendant-appellant Renteria selling small amounts of cocaine to a police informant. In November 1990, Renteria appeared as a subpoenaed witness before a federal grand jury investigating the cocaine trafficking conspiracy of which she was a member. For her testimony, Renteria was given "use immunity." Despite the grant of immunity, Renteria committed perjury, denying that she had sold or possessed cocaine at any time after 1985. Renteria was later indicted, and eventually she pled guilty to one count of conspiracy to distribute cocaine and one count of perjury.
 
 
 3
 The district court grouped the two counts as closely-related counts under U.S.S.G. § 3D1.2. Since the offense level for the conspiracy charge was higher than the offense level for the perjury charge, the court determined the group offense level to be equivalent to that of the conspiracy charge, i.e., 14. Section 3D1.3. Renteria was given a 2-level reduction for acceptance of responsibility, § 3E1.1, but that was offset by a 2-level increase for obstruction of justice, § 3C1.1,[1] due to her perjury before the grand jury. Renteria challenges the adjustment based on obstruction of justice.
 
 B. Earle
 
 4
 Allen Lee Earle was indicted for his participation in a cocaine trafficking conspiracy and for delivery of cocaine. Earle and the government eventually entered into a plea agreement in which Earle agreed to plead guilty to one count under 21 U.S.C. § 841(a)(1) in return for which all other charges in the indictment against Earle were dropped. The plea agreement contained no calculations as to the expected guideline range for sentencing purposes, nor did the agreement discuss Earle's criminal history category.
 
 
 5
 Earle entered a plea of guilty, and the district court adjudged him guilty at that time, though it withheld acceptance of the plea agreement subject to the results of a presentence investigation. There was no discussion at this time as to any expected guideline range. In response to questions from the court, Earle acknowledged: 1) that he understood that his guilty plea subjected him to as much as 20 years imprisonment with a minimum of three years supervised release, 2) that he had not been promised any type of sentence for his guilty plea, 3) that the court would not be able to determine his sentence until after completion of the presentence report, and 4) that if the sentence imposed by the court turned out to be more severe than he expected at the time of his guilty plea, he was still bound by his plea.
 
 
 6
 The probation officer then issued a presentence report on Earle. The report concluded that Earle was a career offender because he had two prior convictions for crimes of violence. These involved the burglary of an uninhabited residence at age 17 and a robbery at age 21. Because of his classification as a career offender, Earle's base level offense increased from 14 to 32 and the guidelines required that he be sentenced under Criminal History Category VI. As a result, under the guidelines Earle faced a sentence range of 168 to 210 months. Without career offender status, Earle would have faced a range of 27-33 months.
 
 
 7
 Earle objected to his classification as a career offender. Earle also requested that, should the court find career offender status appropriate, the court depart downward from the applicable guideline range. Earle argued that there were mitigating circumstances which warranted such a downward departure. In addition, Earle moved to withdraw his plea of guilty.
 
 
 8
 The court denied Earle's motion to withdraw his guilty plea. The court reasoned that Earle was aware of the allegations to which he admitted and that there had been no mention of an anticipated guideline range at the time Earle entered his plea. The court then sentenced Earle as a career offender and imposed a term of imprisonment of 14 years to be followed by a five year term of supervised release. At no time did the court specifically rule on Earle's motion for a downward departure from the applicable sentencing guidelines.
 
 II. DISCUSSION
 A. Renteria
 
 9
 Renteria first argues that the sentencing court erred in finding that her perjury was a willful obstruction of justice. Renteria maintains that she perjured herself because she feared repercussions from another co-conspirator. She also claims that she lied because she mistakenly believed that she did not "distribute" drugs. Thus, she argues, she did not "willfully" obstruct justice as provided in § 3C1.1
 
 
 10
 A determination that Renteria obstructed justice is a factual finding which will be disturbed only if clearly erroneous. United States v. Caicedo, 937 F.2d 1227, 1233 (7th Cir.1991); United States v. Osborne, 931 F.2d 1139, 1153 (7th Cir.1991).
 
 
 11
 In sentencing Renteria, the district court explicitly accepted the calculations submitted by the Probation Office in the presentence report. The presentence report discussed Renteria's testimony before the grand jury and how that testimony plainly contradicted the facts. This record supports a conclusion that Renteria acted "willfully." The district court was not required to accept Renteria's claim that she lied only to protect herself and her family from possible retaliation.[2] The same is true for her claim that she mistakenly believed that she did not "distribute" drugs. Therefore, the district court's determination that Renteria obstructed justice is not clearly erroneous. See United States v. Brown, 900 F.2d 1098, 1103 (7th Cir.1990) (no clear error where alternative views of the evidence exist).
 
 
 12
 Renteria also notes that the court made no specific finding of fact that she obstructed justice. To the extent that she argues that this is reversible error, we disagree. As mentioned above, the district court explicitly accepted the calculations in the presentence report. Those calculations were based on findings that Renteria committed perjury. Moreover, in the Statement of Reasons accompanying the judgment, the court explained the enhancement for obstruction of justice by noting that "the defendant testified falsely before the Grand Jury." The court's position was clear; it was not necessary that the court specifically state that the defendant willfully obstructed justice. See United States v. Caicedo, 937 F.2d 1227, 1234 (7th Cir.1991).
 
 
 13
 Renteria next argues that her sentence essentially "double-counts" her perjury conduct. She argues that her grouped base offense level of 14 already included her perjury offense. Thus, adding to the offense level for obstruction of justice counts the obstructive aspect of her perjury twice.[3]
 
 
 14
 Renteria's view relies on an erroneous reading of § 3C1.1, application note 6, which states:
 
 
 15
 Where the defendant is convicted of an offense covered by ... § 2J1.3 (Perjury or Subornation of Perjury) ..., this adjustment is not to be applied to the offense level for that offense except where a significant further obstruction occurred during the investigation or prosecution of the obstruction offense.... Where the defendant is convicted both of the obstruction offense and the underlying offense, the count for the obstruction offense will be grouped with the count for the underlying offense under [§ 3D1.2(c) ]. The offense level for that group of closely-related counts will be the offense level for the underlying offense increased by the 2-level adjustment specified by this subsection, or the offense level for the obstruction offense, whichever is greater.
 
 
 16
 Renteria interprets note 6 to mean that § 3C1.1 does not apply if the defendant is convicted of an offense such as perjury unless there is further obstruction during the investigation or prosecution of the underlying obstruction offense.
 
 
 17
 Renteria's interpretation finds no support in the language of note 6. The "further obstruction" requirement is mentioned in relation to the situation where the defendant is convicted of an obstruction-type offense alone. There is nothing in the language of note 6 to suggest that it was meant to apply beyond that specific situation. Renteria's interpretation of note 6 has been rejected elsewhere. See United States v. Winn, 948 F.2d 145, 162 (5th Cir.1991), cert. denied, 112 S.Ct. 1599 (1992).
 
 
 18
 Renteria supports her interpretation of note 6 by arguing that it is the only one which provides for equal treatment among those with multiple counts grouped under § 3D1.2, specifically those whose lower-level offense is an obstruction-type offense and those whose lower-level offense is not. She maintains that the enhancement for obstruction of justice for her perjury results in penalizing her more severely than others who have a nonobstruction-type lower-level offense. However, this is implicitly contemplated by § 3D1.2(c) under which her perjury count is considered an adjustment to the guideline applicable to the conspiracy count.[4] Such an enhancement is necessary; otherwise, a person in Renteria's position would face no penalty for lying to the grand jury. It is Renteria's interpretation of note 6 which denies equal treatment for equal conduct since, under her interpretation, one who commits perjury would be treated the same as one who testifies truthfully.
 
 
 19
 To summarize, we find no clear error in the district court's conclusion that Renteria willfully obstructed justice. The district court properly adjusted Renteria's sentence upwards for obstruction of justice.
 
 B. Earle
 1. Withdrawal of Guilty Plea
 
 20
 Earle challenges the district court's refusal to allow him to withdraw his guilty plea after the presentence report recommended that he be classified as a career offender. Earle contends that his court-appointed counsel failed to discuss with him the possibility of his classification as a career offender, and that he "was completely unaware of the possibility that his guideline range would be greatly increased" if he were sentenced as a career offender. As a result, he argues, he had no meaningful understanding of the consequences of his plea, and thus it was involuntarily made.
 
 
 21
 Under Federal Rule of Criminal Procedure 32(d), the district court may permit withdrawal of a plea of guilty before sentencing upon a showing by the defendant of any fair and just reason. The decision whether to allow withdrawal of a guilty plea is within the sound discretion of the trial court, and that decision will be reversed on appeal only on a showing of abuse of discretion. United States v. Caban, 962 F.2d 646 (7th Cir.1992); United States v. Scott, 929 F.2d 313, 315 (7th Cir.1991).
 
 
 22
 Earle's position amounts to the claim that the sentence imposed by the district court was more severe than he had expected. In this regard, Earle's situation closely resembles the situation in United States v. Scott, 929 F.2d 313 (7th Cir.1991). In that case, before accepting the plea, the district court informed Scott that if the sentence imposed was more severe than he expected, then Scott would have no right to withdraw his plea. Based on a subsequent presentence report, the district court imposed a sentence higher than Scott had expected at the time he entered his plea. Scott moved to withdraw his guilty plea, but the district court refused to hear evidence about Scott's understanding of his expected sentence and denied the motion. We stated that
 
 
 23
 [t]o allow Scott to withdraw his guilty plea because of secret expectations that he harbored in the face of directly contradictory sworn testimony would undermine the strong societal interest in the finality of guilty pleas.
 
 
 24
 Scott, 929 F.2d at 315. We thus concluded that the district court did not abuse its discretion.
 
 
 25
 Earle tries to distinguish Scott on the ground that Scott testified at his plea hearing that no one had made any prediction to him as to his likely sentence. Earle, on the other hand, testified that no one had promised him any type of sentence in return for his guilty plea. Despite this distinction, the fact remains that both Scott and Earle acknowledged at their plea hearings that they would not be allowed to withdraw their guilty pleas if the sentence imposed by the court exceeded their expectations. This is the crucial similarity between Scott and this case. As we have said numerous times,
 
 
 26
 [t]o deter abuses in the withdrawal of guilty pleas under Rule 32(d), and to protect the integrity of the judicial process, we have held that "rational conduct requires that voluntary responses made by a defendant under oath [when entering a guilty plea] ... be binding."
 
 
 27
 United States v. McFarland, 839 F.2d 1239, 1242 (7th Cir.) (quoting United States v. Ellison, 835 F.2d 687, 693 (7th Cir.1987)), cert. denied, 486 U.S. 1014 (1988). In light of the statements made by Earle at his plea hearing, we find no abuse of discretion in the district court's refusal to allow Earle to withdraw his guilty plea.
 
 2. Downward Departure
 
 28
 Earle contends that the district court failed to consider a downward departure based on alleged mitigating circumstances surrounding Earle's burglary conviction at age 17. Earle argues that this failure to even consider a downward departure constitutes an abuse of discretion. However, before we can entertain this claim, we must first address our jurisdiction to hear this issue on appeal.
 
 
 29
 Our cases make clear that we have no jurisdiction to review a decision on the merits not to depart downward. United States v. Franz, 886 F.2d 973, 978 (7th Cir.1989). Such a decision is discretionary and not subject to review. United States v. Poff, 926 F.2d 588, 590-91 (7th Cir.), cert. denied, 112 S.Ct. 96 (1991). However, where the district court refuses to depart based on the erroneous belief that it lacks authority to depart, that is a legal conclusion. A sentence imposed based on such an erroneous legal conclusion is imposed "in violation of law," 18 U.S.C. § 3742(a)(1), and thus subject to appellate review. Poff, 926 U.S. at 590-91.
 
 
 30
 Although the district court did not specifically address Earle's motion for a downward departure, there is no evidence in the record that it believed that it did not have the power to make such a departure.[5] Because we have no reason to believe that the district court was unaware of its authority to depart, we presume that its failure to depart was a discretionary decision based on the merits. Under Poff, we have no jurisdiction to review this decision.
 
 III. CONCLUSION
 
 31
 Renteria's sentence is AFFIRMED. The district court's denial of Earle's motion to withdraw his guilty plea is AFFIRMED. Finally, we DISMISS for lack of jurisdiction Earle's appeal of the district court's failure to make a downward departure from the sentencing guidelines.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). Renteria agreed with the government's earlier request that the case be submitted without oral argument. Earle did not respond to our notice. Consequently, the consolidated appeals have been submitted on the briefs
 
 
 [1]
 Section 3C1.1 provides:
 If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.
 
 
 [2]
 Even if the district court accepted Renteria's claim that she lied to avoid possible repercussions, the only way Renteria could avoid those repercussions was to obstruct justice. Although she may have had a "good" reason for lying, she nevertheless obstructed justice just as "willfully" as someone who lies for a "bad" reason
 
 
 [3]
 This is an issue involving the legal interpretation of the sentencing guidelines. Thus, our review is de novo. United States v. Lozoya-Morales, 931 F.2d 1216, 1218 (7th Cir.1991)
 
 
 [4]
 All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule:
 * * *
 (c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.
 U.S.S.G. § 3D1.2 (emphasis added).
 
 
 [5]
 Earle cites one remark by the district court which he claims shows that the court believed that it did not have authority to depart. Sentencing Hearing Tr. at 18. However, the court was referring to its lack of discretion in classifying Earle's burglary as a "crime of violence."